The **OGLETHORPE COMPANY, the Peachtree-Chamblee Company and the Golf Club Company**

v.

**The UNITED STATES.**

No. 228–74.

United States Court of Claims.

July 8, 1977.

---

**10.** 74–1 BCA at 49,829.

Emil T. Bayko, Chicago, Ill., atty. of record for plaintiff. Richard H. Appert, New York City, Donald T. MacNaughton, White & Case, Washington, D. C., and John J. Czyzewski, Fairfax, Va., of counsel.

Dorothy R. Burakreis, Washington, D. C., with whom was Asst. Atty. Gen. Barbara Allen Babcock, Washington, D. C., for defendant.

Before COWEN and SKELTON, Senior Judges, and KUNZIG, Judge.

KUNZIG, Judge.

This case, before the court on cross-motions for summary judgment, presents a challenge by the Oglethorpe Company, the Peachtree-Chamblee Company, and The Golf Club Company (plaintiffs) to the sale and purchase of their properties by the Secretary of the Department of Housing and Urban Development (HUD) at foreclosure sale. Plaintiffs are defaulting mortgagors on Federal Housing Administration (FHA) insured mortgages claiming the difference between the price HUD paid for the properties at foreclosure sale and the fair market value of the properties. They present three alternative grounds for relief: (1) that the foreclosure sale was materially defective under Georgia law; (2) that under Georgia law they have the right to recover the difference between the sale price and fair market value; and (3) that the foreclosure sale constituted a taking without just compensation in violation of the Fifth Amendment. Upon careful consideration of all issues raised by plaintiffs, we hold for the Government.

In 1948 plaintiffs mortgaged apartment house projects which they owned in Georgia. Prudential Insurance Company (Prudential) was the mortgagee, and the mortgages were insured by FHA. In 1968, after several debt rescheduling arrangements and other modifications, plaintiffs defaulted on the mortgages. Prudential, in order to collect the mortgage insurance, assigned the deeds securing the mortgages to HUD.[1]

---

1. The assignment by Prudential to HUD was pursuant to 12 U.S.C. § 1743(c) (1970), which, states:

    "(c) Payments; default; insurance benefits for mortgagee; value of mortgage; foreclosure of mortgage.

    The failure of the mortgagor to make any payment due under or provided to be paid by the terms of a mortgage insured under this section shall be considered a default under such mortgage, and if such default continues for a period of thirty days, the mortgagee shall be entitled to receive the benefits of the insurance as hereinafter provided, upon assignment, transfer, and delivery to the Secretary, within a period and in accordance with rules and regulations to be prescribed by the Secretary of (1) all rights and interest arising under the mortgage so in default; (2) all claims of the mortgagee against the mortgagors or others, arising out of the mortgage transaction; (3) all policies of title or other insurance or surety bonds or other guaranties and any and all claims thereunder; (4) any balance of the mortgage loan not advanced to the mortgagor; (5) any cash or property held by the mortgagee, or to which it is entitled, as deposits made for the account of the mortgagor and which have not been applied in reduction of the principal of the mortgage indebtedness; and (6) all records, documents, books, papers, and accounts relating to the mortgage transaction. Upon such assignment, transfer, and delivery the obligation of the mortgagee to pay the premium charges for mortgage insurance shall cease, and the Secretary shall, subject to the cash adjustment provided for in section 1739(c) of this title, issue to the mortgagee debentures having a total face value equal to the value of the mortgage, and a certificate of claim as hereinafter provided. For the purposes of this subsection, the value of the mortgage shall be determined in accordance with rules and regulations prescribed by the Secretary, by adding to the amount of the original principal obligation of the mortgage which was unpaid on the date

Defendant then proceeded to foreclose on the mortgages, following, it believed, applicable Georgia procedure for sheriff's sales [2] and the power of sale provision contained in paragraph eleven of the mortgages.

Prior to sale, defendant published separate Notices of Sale in the DeKalb County *New Era* [3] on September 5, 1968 and weekly thereafter through September 26, 1968, for each of the three properties. The Notices stated that the realty and personalty separately described (as required by Georgia law, *see Hinson v. First Nat'l Bank in Waycross*, 221 Ga. 408, 144 S.E.2d 765 (1965)) would be sold at public auction "by the Secretary of HUD, or his attorney, before the Courthouse door in Decatur, DeKalb County, Georgia, between the legal hours of sale on the first Tuesday in October, 1968."

As the U. S. Attorney was reading the notice of sale on the morning of the appointed Tuesday, he was served at the Courthouse steps by plaintiffs' temporary restraining order (TRO) enjoining the sale. Defendant immediately acted to remove the suit from the local county court, where the TRO was obtained, to federal district court. Still on the same appointed Tuesday (October 1, 1968), the district court vacated the TRO and the sale was conducted that afternoon at 3 PM, admittedly within the legal hours of sale. Defendant was the only bidder. It purchased the property from itself at a price equal to about ninety percent (90%) of the outstanding indebtedness of the mortgages.

On October 17, 1968, defendant brought suit to "confirm" the sales, as required by Georgia law in order for a creditor to sue his debtor for any deficiency resulting from a resale. Ga.Code Ann. §§ 67–1503, 67–1504. The federal district court refused to confirm the sales on the ground that the sale price of the properties "was considerably less than true market value." But the court in its discretion also refused to order a resale, in effect securing title in the Government. The district court decision was affirmed on appeal by the Fifth Circuit, *United States v. Golf Club Co.*, Civ. No. 12163, 12164, 12165 (N.D.Ga., Dec. 31, 1969) *aff'd* 435 F.2d 9 (5th Cir. 1970).

On October 21, 1968, plaintiffs filed suit in federal district court to set aside the sales on the ground that the bidding on the sales was "chilled." The district court refused plaintiffs' request, saying that any "chilling" that had occurred was due to plaintiffs' own action in obtaining a TRO. This decision was also affirmed on appeal by the Fifth Circuit. *Oglethorpe Co. v. Weaver*, Civ. No. 12131 (N.D.Ga., March 28, 1969), *aff'd* 420 F.2d 696 (5th Cir. 1970).

of default, the amount the mortgagee may have paid for (A) taxes, special assessments, and water rates, which are liens prior to the mortgage; (B) insurance on the property; and (C) reasonable expenses for the completion and preservation of the property and any mortgage insurance premiums paid after default; less the sum of (i) an amount equivalent to 1 per centum of the unpaid amount of such principal obligation on the date of default; (ii) any amount received on account of the mortgage after such date; and (iii) any net income received by the mortgagee from the property after such date: *Provided*, That the mortgagee in the event of a default under the mortgage may, at its option and in accordance with the regulations of, and in a period to be determined by the Secretary, proceed to foreclose on and obtain possession of or otherwise acquire such property from the mortgagor after default, and receive the benefits of the insurance as herein provided, upon (1) the prompt conveyance to the Secretary of title to the property which meets the requirements of the rules and regulations of the Secretary in force at the time the mortgage was insured, and which is evidenced in the manner prescribed by such rules and regulations; and (2) the assignment to him of all claims of the mortgagee against the mortgagor or others, arising out of the mortgage transaction or foreclosure proceedings, except such claims that may have been released with the consent of the Secretary. Upon such conveyance and assignment, the obligation of the mortgagee to pay the premium charges for insurance shall cease and the mortgagee shall be entitled to receive the benefits of the insurance as provided in this subsection, except that in such event the 1 per centum deduction, set out in (i) hereof, shall not apply."

2. Ga.Code Ann. §§ 37–607, 39–1101–08, 39–1201–06.

3. The DeKalb County *New Era* is a weekly newspaper published in Decatur, Georgia.

Plaintiffs then brought another suit against the Government (again in federal district court) seeking (1) to reinstate title in themselves and (2) to prevent defendant from disposing of the property. Plaintiffs alleged an unconstitutional taking of property. The federal district court again refused plaintiffs' requests, saying that *Oglethorpe Co. v. Weaver* had disposed of all the issues brought in this second suit, and, therefore, dismissed on the grounds of res judicata. *Oglethorpe Co. v. United States,* Civ. No. 16546 (N.D.Ga., Oct. 20, 1972).

After the conclusion of all these suits, plaintiffs were left, it appears, with but one avenue of possible relief—resort to the Court of Claims. They availed themselves of this avenue in June 1974, when a petition was filed seeking the difference between the purchase price paid by defendant and the fair market value of the properties.

Plaintiffs present three principal arguments to the court. First, they claim that the original sale of the properties was materially defective. Second, they take the position that defendant breached the mortgage contract by failing to sell the properties at fair market value. With regard to this argument, plaintiffs explain that Georgia law allowing recovery from the mortgagee-seller of the difference between fair market value and the sale price should prevail over Federal law which prohibits HUD from bidding more than the amount of the indebtedness for property at a foreclosure sale. 12 U.S.C. § 1713(k) (1970).[4] As a final argument, plaintiffs put forward a Fifth Amendment[5] taking theory, claiming that defendant by purchasing the properties at less than fair market value, has "taken" the properties without just compensation.

Defendant counters each of plaintiffs' positions in turn. First, defendant states that plaintiffs' claim of "material defects" in the original sale is barred by res judicata. Next the Government asserts that Federal law controls the amount that it can pay for properties at foreclosure sale and that under Federal law, plaintiffs have no claim. Finally, defendant takes the position that plaintiffs' "Fifth Amendment taking" argument is wholly without merit.

We agree with defendant on each point and, therefore, hold against plaintiffs, dismissing their petition.

Turning first to plaintiffs' claim of "material defects" in the sale of the properties, we find that the Government closely tracked the requirements for sheriff's sales

---

**4.** 12 U.S.C. § 1713(k) provides:

"(k) Acquisition of property by conveyance or foreclosure.

The Secretary is authorized either to (1) acquire possession of and title to any property, covered by a mortgage insured under this section and assigned to him, by voluntary conveyance in extinguishment of the mortgage indebtedness, or (2) institute proceedings for foreclosure on the property covered by any such insured mortgage and prosecute such proceedings to conclusion. The Secretary at any sale under foreclosure may, in his discretion, for the protection of the General Insurance Fund, bid any sum up to but not in excess of the total unpaid indebtedness secured by the mortgage, plus taxes, insurance, foreclosure costs, fees, and other expenses, and may become the purchaser of the property at such sale. The Secretary is authorized to pay from the General Insurance Fund such sums as may be necessary to defray such taxes, insurance, costs, fees, and other expenses in connection with the acquisition or foreclosure of property under this section. Pending such acquisition by voluntary conveyance or by foreclosure, the Secretary is authorized, with respect to any mortgage assigned to him under the provisions of subsection (g) of this section, to exercise all the rights of a mortgagee under such mortgage, including the right to sell such mortgage, and to take such action and advance such sums as may be necessary to preserve or protect the lien of such mortgage."

**5.** The Fifth Amendment to the United States Constitution states:

"No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation."

set forth in the Georgia laws. Ga.Code Ann. §§ 37–607, 37–1101–08, 37–1201–06. Even with plaintiffs' delaying TRO, the sale was still conducted within the legal hours on the proper day. Any "chilling" effect was caused by plaintiffs' own action, not those of defendant.

This case, as *Oglethorpe Co. v. United States, supra,* "appears to be a classic example for the application of res judicata," and therefore barred by the decision in *Oglethorpe Co. v. Weaver, supra.* The same parties and issues are present before this court as were before the district court in *Oglethorpe Co. v. Weaver.* It is not the function of this court to relitigate issues already fully aired before another court of competent jurisdiction. *Commissioner v. Sunnen,* 333 U.S. 591, 597, 68 S.Ct. 715, 92 L.Ed. 898 (1948).

As to issues concerning procedural defects in the sale not decided in *Oglethorpe Co. v. Weaver,* res judicata also bars their litigation in this lawsuit. Plaintiffs have had their day in court; they had their opportunity to raise all pertinent matters. In the instant case, we can find no factual issues that should not have been brought before the district court in *Oglethorpe Co. v. Weaver. Commissioner v. Sunnen, supra; McConnell v. Travelers Indemnity Co.,* 346 F.2d 219, 222 (5th Cir. 1965); *Oglethorpe Co. v. United States, supra.*

We hold plaintiffs' "material defects" claim totally barred by res judicata.

■ Next we focus on the central issue of the case: whether federal or state law governs plaintiffs' rights following the foreclosure sale. Plaintiffs claim that Georgia law controls by the terms of the mortgage contracts and gives plaintiffs the right to recover the difference between the sale price and the fair market value from the Government as the *seller* of the properties. In this case, the difference could be as much as $3.0 million.

To evidence Georgia law, plaintiffs rely on cases such as *Buckhead Doctors Bldg., Inc. v. Oxford Finance Co., Inc.,* 115 Ga. App. 534, 154 S.E.2d 760 (1967) and *Langley v. Stone,* 112 Ga.App. 237, 144 S.E.2d 627 (1965). We need not decide whether plaintiffs' statement of Georgia law is correct. By the statutes and case law of that State, plaintiffs, in another setting, may have the right to recover the difference between the sale price and the fair or "true" market value from the vendor of the property. *See Aaron v. Life Ins. Co. of Ga.,* 138 Ga.App. 286, 226 S.E.2d 96 (1976) (For a discussion equating "fair" and "true" market value, see the special concurrence of Judge Clark, 226 S.E.2d at 97–98).

But the instant case does not present the usual situation of an aggrieved Georgia mortgagor suing a private mortgagee for damages. It is a suit against the Federal Government. The issue, therefore, is whether the Federal Government is subject to Georgia law under the circumstances of this case.

In the case at bar it is clear that the federal interest involved overrides Georgia law. From the terms of the mortgage contracts, we cannot say that HUD agreed to be bound by Georgia law.[6] This is particularly so when Congress has specifically limited the amount the Secretary of HUD can spend for the acquisition of property at foreclosure sale by section 207 of the National Housing Act, codified at 12 U.S.C. § 1713(k) (1970):

> * * * The Secretary at any sale under foreclosure may, in his discretion, for the protection of the General Insurance Fund, *bid any sum up to but not in excess of the total unpaid indebtedness secured by the mortgage,* * * * and may become the purchaser * * * at such sale. * * *. (emphasis supplied)

Plaintiffs' argument that § 1713(k) only limits the Government as *buyer* and, therefore, does not apply to the Government as *seller* is without merit. The obvious intent of § 1713(k) is to place a *ceiling* on the

---

**6.** Because defendant did not agree to be bound by Georgia law, we cannot, under the facts of this case, read Georgia law into the contract as an "implied in fact" term. *Algonac Mfg. Co. v. United States,* 428 F.2d 1241, 1255–56, 192 Ct.Cl. 649, 673–74 (1970).

amount the Government can pay for property obtained at foreclosure sale (i. e., "not in excess of the total unpaid indebtedness"). To follow plaintiffs' reasoning, which we decline to do, would create an artificial distinction and improperly circumvent clear congressional directive.

In addition, it is well established that the National Housing Act is a program that must be "uniform in character throughout the Nation" and, therefore, not subject to the vagaries of state law—*e. g., United States v. Merrick Sponsor Corp.*, 421 F.2d 1076, 1078–79 (2d Cir. 1970) (quoting from *United States v. Yazell*, 382 U.S. 341, 354, 86 S.Ct. 500, 15 L.Ed.2d 404 (1966)); *Clark Investment Co. v. United States*, 364 F.2d 7 (9th Cir. 1966); *United States v. Sylacauga Properties, Inc.*, 323 F.2d 487 (5th Cir. 1963); *United States v. Helz*, 314 F.2d 301 (6th Cir. 1963).

Plaintiffs, however, seek to distinguish these cases and rely on *United States v. Yazell*, 382 U.S. 341, 86 S.Ct. 500, 15 L.Ed.2d 404 (1966), to support their contention that state law applies. We agree that each of the cases cited *supra* may be distinguished on the facts as each arose in a different context. But each evidences the overriding federal interest set forth in the National Housing Act. *See United States v. Stadium Apartments, Inc.*, 425 F.2d 358, 364 (9th Cir.), *cert. denied*, 400 U.S. 926, 91 S.Ct. 187, 27 L.Ed.2d 185 (1970); *United States v. Allgeyer*, 466 F.2d 1195 (9th Cir. 1972).

*United States v. Yazell, supra*, is not to the contrary. Indeed, it supports defendant's position (and our conclusion). In *Yazell*, the Supreme Court held that the federal interest of the Small Business Administration in collecting a deficiency judgment on a disaster loan was insufficient to warrant overriding the Texas law of coverture. However, Mr. Justice Fortas, writing for the majority, carefully explained the scope of the Court's decision:

> * * * We decide only that this Court, *in the absence of specific congressional action*, should not decree in this situation that implementation of federal interests requires overriding the particular state rule involved here. Both theory and the precedents of this Court teach us solicitude for state interests, particularly in the field of family and family-property arrangements. They should be overridden by the federal courts *only where clear and substantial interests of the National Government, which cannot be served consistently with respect for such state interests, will suffer major damage if the state law is applied.* (emphasis supplied).

*United States v. Yazell, supra*, 382 U.S. at 352, 86 S.Ct. at 507.

In this case, we have both "specific congressional action" and a "clear and substantial interests of the National Government" and, therefore, hold that federal law governs plaintiffs' rights following the foreclosure sale. Under federal law, plaintiffs have no claim for damages under the plain meaning of § 1713(k), *supra*.

█ There remains only plaintiffs' claim that HUD, by selling the properties pursuant to valid mortgage contracts and by buying them in accordance with statutory directive, somehow engaged in a taking without just compensation in violation of the Fifth Amendment. Plaintiffs present two theories for recovery on this point. The first is based on the premise that Georgia law governs the parties' rights under the mortgage contracts. Plaintiffs take the position that since Georgia law requires the seller to pay the mortgagors (plaintiffs) the difference between the purchase price and fair market value, defendant's failure to tender this amount to plaintiffs is a taking. Because we have already decided that federal law controls, *supra*, plaintiffs' premise fails and we need not consider this argument further.

Plaintiffs' second theory is grounded on the proposition that, regardless of Georgia law, defendant has taken a constitutionally protected interest of plaintiffs in the properties. We fail to see what interest plaintiffs had that was taken.

As plaintiffs have admitted, under Georgia law title to the properties was in the Government as mortgagee from the date of assignment by Prudential. Absent title, plaintiffs point to their equities of redemption as giving them a constitutionally protected interest. Assuming, *arguendo*, that the right of redemption is a constitutionally protected interest, · it is not an interest available to plaintiffs in this case. First, plaintiffs waived their rights of redemption in the mortgage contracts. Second, even if that waiver is not valid under state law, *United States v. Stadium Apartments, Inc., supra,* held the waiver valid in FHA mortgage situations. And, finally as admitted at oral argument, plaintiffs never sought to exercise a right of redemption. Having never sought to exercise this right prior to foreclosure sale, plaintiffs gave it up. *See Cummings v. Johnson,* 218 Ga. 559, 129 S.E.2d 762 (1963). No Fifth Amendment taking is involved in the case at bar.

In summary, we hold that each of the arguments expounded by plaintiffs fails. First, plaintiffs' contention that the sale of the property was "materially defective" is barred by res judicata. Second, their claim to the difference between the sale price and fair market value of the properties based on the application of Georgia law fails because Federal, not state law controls this case. Finally, plaintiffs' theories that defendant engaged in a Fifth Amendment taking fail because of preeminent Federal law and because plaintiffs have failed to show a constitutionally protected interest in the properties.

Accordingly, upon consideration of the briefs and submissions of the parties, and after hearing oral argument, defendant's motion for summary judgment is granted, plaintiffs' motion for summary judgment is denied, and the petition is dismissed.