J. Michael GEIGER, Jr., M.D.

v.

The UNITED STATES.

No. 113–81C.

United States Claims Court.

Nov. 8, 1983.

Robert G. Pugh, Jr., Shreveport, La., for plaintiff. Pugh & Pugh, Shreveport, La., of counsel.

Carmen M. Shepard, Washington, D.C., with whom was Asst. Atty. Gen., J. Paul McGrath, Washington, D.C., for defendant. Major Charles R. Fulbruge, III, Department of the Army, Washington, D.C., of counsel.

## OPINION ON DEFENDANT'S MOTION AND PLAINTIFF'S CROSS–MOTION FOR SUMMARY JUDGMENT

WHITE, Senior Judge.

The plaintiff, Dr. J. Michael Geiger, Jr. (Dr. Geiger), is a medical officer in the United States Army. He is suing for rescission of what he refers to as the contract under which he is serving or, in the alternative, for money damages because of the Army's failure to pay him a sum of money to which he claims entitlement on the basis of his military services.

The defendant has filed a motion for summary judgment, and the plaintiff has filed a cross-motion for summary judgment.

As explained later, it is concluded that the plaintiff is not entitled to rescission or to a judgment for money damages.

*Background Information*

The facts as to which there is no controversy between the parties will be outlined in this part of the opinion.

Dr. Geiger was commissioned as a 2nd Lieutenant in the United States Army Reserve on November 22, 1969, when he was a first-year student in medical school. Thereafter, while attending medical school, Dr. Geiger participated in an Army-funded scholarship program.

After graduating from medical school in June 1973, Dr. Geiger began a period of active duty in the Army, serving in the grade of Captain. He spent a year as an intern at Madigan Army Medical Center, Tacoma, Washington; and he then served in West Germany, in Iran, and at Ft. Bragg, North Carolina. During the period mentioned in this paragraph, Dr. Geiger was promoted to the grade of Major in May 1976.

On February 9, 1978, while serving at Ft. Bragg, North Carolina, Dr. Geiger submitted an "Unqualified Resignation" from the Army, to be effective on July 1, 1978, or as soon as practicable thereafter. He stated that he was tendering his resignation "in order to attend civilian residency training in my profession." The resignation was approved April 21, 1978, and was to be effective July 1, 1978.

As of 1978, the Army was operating what was known as the Army Civilian Sponsor Residency Training Program for medical officers who had been accepted for residency training in civilian institutions and who would become Military Physician Specialists. A medical officer participating in the program received full active-duty pay and allowances, including base pay and special medical pay, and housing and subsistence allowances. In addition, the Army paid all of the officer's educational expenses.

Also, as of 1978, there was in existence legislation (37 U.S.C. § 311 (1976)) which provided for "continuation pay" to be paid to certain medical and dental officers of the Army, Navy, Air Force, and Public Health Service. In order to qualify for continua-

tion pay, it was necessary (among other things) for a medical officer to be serving on active duty in a critical specialty, to have completed his initial active duty obligation, and to execute a written agreement to remain on active duty for at least one additional year. Continuation pay was to consist of "not more than four months' basic pay" for each additional year that an officer agreed to remain on active duty.

On May 24, 1978, before his resignation from the Army became effective, Dr. Geiger was designated as a Military Physician Specialist. The letter of designation informed him that his selection as a Critical Specialist entitled him to participate in the Continuation Pay Program on and after July 1, 1978. It further stated that the designation would "remain valid so long as the Continuation Pay Program is in effect unless the designation is withdrawn * * * or you enter into an ineligible status"; and that, in order to receive continuation pay, he must sign an agreement.

On May 25, 1978, Dr. Geiger voluntarily withdrew his resignation as an Army officer in order to pursue residency training in ophthalmology at Louisiana State University under the Army Civilian Sponsor Residency Training Program. Dr. Geiger was approved by the Army for participation in the program. He became a resident in opthamology at Louisiana State University in July 1978, and he continued in the program until July 1981. While undergoing residency training at Louisiana State University, Dr. Geiger received full active-duty pay and allowances; and the Army paid all of his educational expenses.

On June 23, 1978, Dr. Geiger submitted to the Army a request for continuation pay under 37 U.S.C. § 311. The request stated (among other things) that "I hereby agree to serve on active duty in the Army for one year from the effective date of approval of this request * * *." Dr. Geiger's request was approved by the Army on July 6, 1978; and the approval provided that Dr. Geiger would receive continuation pay for the 1-year period in the gross amount of $5,758.80 (which would be over and above his active

duty pay and allowances). The continuation pay for this 1-year period was paid to Dr. Geiger in a lump sum on August 31, 1978.

Dr. Geiger submitted a second request for continuation pay on June 4, 1979; and this request, which likewise contained an agreement by Dr. Geiger to serve on active duty for 1 year from the effective date of the approval of the request, was approved by the Army on June 11, 1979. The approval provided for continuation pay to Dr. Geiger in the gross amount of $6,488.40. The continuation pay for this 1-year period was paid to Dr. Geiger in a lump sum.

A third request for continuation pay was submitted by Dr. Geiger on June 11, 1980. This request also contained an agreement by Dr. Geiger to serve on active duty in the Army for 1 year from the effective date of the approval of the request. Dr. Geiger's request was approved by the Army on June 26, 1980; and the approval provided for continuation pay to Dr. Geiger in the gross amount of $6,944.40. However, no continuation pay was paid to Dr. Geiger for this 1-year period, because of an amendment to 37 U.S.C. § 311 that will be mentioned in the next paragraph.

On June 28, 1980, the Uniformed Services Health Professionals Special Pay Act of 1980 was enacted (94 Stat. 587). Section 2(a) of the act amended 37 U.S.C. § 302 so as to increase very substantially the special pay of medical officers of the Army, Navy, and Air Force; and section 4(d)(1) of the act amended 37 U.S.C. § 311 so as to restrict continuation pay to dental officers of the Army, Navy, Air Force, and Public Health Service, and medical officers of the Public Health Service. The amendment to 37 U.S.C. § 302 increased Dr. Geiger's special medical pay from $350 per month (or $4,200 per year) to $10,000 per year. On the other hand, the amendment to 37 U.S.C. § 311 eliminated medical officers of the Army (including Dr. Geiger), Navy, and Air Force from the Continuation Pay Program, and was the basis on which the Army failed to pay Dr. Geiger the continuation pay of $6,944.40 for the 1980–81 1-year period un-

der Dr. Geiger's request, and the Army's approval, of June 1980.

### Attempts to Obtain Redress

In a letter that was addressed to the Army on December 2, 1980, Dr. Geiger invoked his "remedies" under the Contract Disputes Act of 1978, and asked that the letter be immediately forwarded "to the proper Contracting Officer."

In a reply dated January 16, 1981, the Army stated that the agreements entered into by Dr. Geiger under the continuation pay legislation "do not constitute a contract within the meaning of the Contract Disputes Act of 1978," and that "no Contracting Officer is involved."

Dr. Geiger filed his complaint (then denominated a petition) in this court's predecessor, the United States Court of Claims, on February 27, 1981.

The complaint alleges that, before his resignation became effective, the Army offered to sponsor Dr. Geiger's residency training in opthamology, a specialty needed by the Army, in return for a year-by-year payback commitment on his part following the residency; that Dr. Geiger made it clear to the Army that he would not accept sponsorship by the Army unless he was eligible for continuation pay under the then-existing provisions of 37 U.S.C. § 311; that the Army informed Dr. Geiger that he was eligible to participate in the Continuation Pay Program during his residency; and that, on the basis of this assurance by the Army that he would receive continuation pay, Dr. Geiger withdrew his resignation and agreed to accept the Army's offer to sponsor his residency in opthamology. It is the plaintiff's view that a contract thereby came into existence between Dr. Geiger and the Army, and that this contract was subsequently supplemented by three 1-year contracts incorporated in the agreements of 1978, 1979, and 1980 previously mentioned.

The complaint seeks relief in the form of a judgment "declaring that the agreement made between Dr. Geiger and the Army in 1978 under which Dr. Geiger withdrew his resignation and began receiving Continuation Pay * * * is null and void because of the Army's breach of contract, and declaring that Dr. Geiger be granted rescission of this agreement," or, in the alternative, declaring that the 1-year agreement of June 1980 "is null and void, and that Dr. Geiger should be granted rescission of this contract." As a third alternative, the complaint requests "a judgment that the Army has breached either or both of these agreements with Dr. Geiger and owes damages to Dr. Geiger * * *."

After filing his complaint in the Court of Claims, the plaintiff filed a "petition for writ of habeas corpus and injunctive relief" in the United States District Court for the Western District of Louisiana (Civil Action No. CI–811217). The respondents in that proceeding were the United States, the Army, and a Colonel Richard B. Stuart. The factual allegations in the petition as to how the plaintiff's cause of action arose (paragraphs 5–21 of the petition) were precisely the same as the operative facts pleaded by the plaintiff in the complaint before this court (paragraphs 3–19 of the complaint). The petition asked the District Court, upon final hearing, to issue an order directing the respondents to discharge Dr. Geiger "from their custody and from the custody of the United States Army."

The respondents filed a motion to dismiss in the District Court.

A final hearing was held before the District Court on August 3, 1981. At the conclusion of the hearing, the court ruled from the bench and granted the respondents' motion to dismiss the petition. The court stated (among other things) "that Dr. Geiger's pay is not a matter solely governed by ordinary contract principles," and "that the failure of those monies is insufficient to entitle the plaintiff to the equitable relief that he seeks in this Court."

On November 13, 1981, Dr. Geiger filed a notice of appeal to the United States Court of Appeals for the Fifth Circuit from the decision of the District Court.

Proceedings in this court were suspended, on motion of the plaintiff, to await the decision of the Fifth Circuit.

The Court of Appeals for the Fifth Circuit, in a decision dated June 13, 1983 (707 F.2d 157), affirmed the judgment of the District Court. In its opinion, the appellate court stated (*id.* at 161) that "the equitable relief requested is manifestly inappropriate in this case"; that, "as to the money dispute, that Geiger has an adequate legal remedy in another forum"; and that "[a] soldier's entitlement to pay is dependent upon statute and regulation, and not upon precepts of contract law."

The case is now before this court on the defendant's motion and the plaintiff's cross-motion for summary judgment.

### Discussion

It is necessary to state at the outset that, without regard to the considerations mentioned later, this court must deny the plaintiff's request for rescission of (what the plaintiff refers to as) the initial contract of 1978 between the Army and himself pursuant to which he withdrew his resignation from the Army and agreed to accept residency training under the Army Civilian Sponsor Residency Training Program, or, in the alternative, for rescission of the 1-year contract (according to the plaintiff) of June 1980 under which the plaintiff agreed to serve on active duty for 1 year upon the Army's promise of continuation pay in the amount of $6,944.40.

This court does not possess the power to grant equitable relief (with a few exceptions, none of which is applicable here), but can only grant money judgments on claims that are within the purview of 28 U.S.C. § 1491(a)(1), as amended by section 133(a) of Public Law No. 97–164 (96 Stat. 25, 40).

This leaves for consideration the plaintiff's claim for money damages because of the Army's failure to grant him continuation pay for the 1980–81 1-year period.

The defendant's first line of defense against Dr. Geiger's claim for money damages is that, in view of the decision by the United States District Court for the Western District of Louisiana, affirmed by the Court of Appeals for the Fifth Circuit, in Dr. Geiger's district court case, the doctrines of *res judicata* and collateral estoppel bar Dr. Geiger from pursuing his claim in the Claims Court.

It is true that the related doctrines of *res judicata* and collateral estoppel would bar Dr. Geiger from relitigating here any issue previously decided by the District Court in Louisiana. *Commissioner v. Sunnen,* 333 U.S. 591, 598, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1947); *Edgar v. United States,* 145 Ct.Cl. 9, 12, 171 F.Supp. 243, 245 (1959); *Oglethorpe Co. v. United States,* 214 Ct.Cl. 551, 557, 558 F.2d 590, 594 (1977). As the Supreme Court said in *Sunnen* (333 U.S. at 598, 68 S.Ct. at 719):

> [M]atters which were actually litigated and determined in the first proceeding cannot later be relitigated. Once a party has fought out a matter in litigation with the other party, he cannot later renew that duel.

In the district court case, however, the "matter" that the parties "fought out" was whether the plaintiff was entitled to injunctive relief in the form of an order directing that Dr. Geiger be discharged from the Army, while the "matter" that is being "fought out" in this court is whether Dr. Geiger is entitled to money damages for loss of pay. The circumstance that the operative facts pleaded in the two cases as to how Dr. Geiger's cause of action arose are the same, and that the plaintiff's contractual theory of recovery in the district court case is the same as the contractual theory of recovery asserted by the plaintiff in this court, does not affect the conclusion that the basic issue in this case is different from the basic issue in the district court case.

Consequently, it is concluded that the plaintiff is not barred by the doctrines of *res judicata* and collateral estoppel from prosecuting in this court a claim for money damages because of alleged loss of pay.

The plaintiff's contractual theory of recovery, however, is as inapplicable to his legal claim for loss of pay in this court as it

was to his petition for injunctive relief in the case before the District Court. The principles of contract law are not applicable to questions concerning the status of military personnel and the entitlement of such personnel to pay for military services. *Bell v. United States,* 366 U.S. 393, 401, 81 S.Ct. 1230, 1235, 6 L.Ed.2d 365 (1961); *United States v. Larionoff,* 431 U.S. 864, 869, 97 S.Ct. 2150, 2154, 53 L.Ed.2d 48 (1977). As this court's predecessor, the United States Court of Claims (whose decisions are binding precedents on this court), said in *Werner v. United States,* 226 Ct.Cl. 462, 471, 642 F.2d 404, 409 (1981), "entitlement to military pay is created and governed entirely by statute."

Consequently, neither the alleged agreement of 1978 under which Dr. Geiger withdrew his resignation from the Army and agreed to enter the Army Civilian Sponsor Residency Training Program (the defendant denies that there was any agreement), nor the 1-year agreement of June 1980 with respect to the third year of Dr. Geiger's residency training, constituted a contract between Dr. Geiger and the Government (represented by the Army).

Congress, by its June 28, 1980, amendments of 37 U.S.C. §§ 311 and 302, removed all medical officers of the Army (including Dr. Geiger), the Navy, and the Air Force from the continuation pay benefits of section 311, while increasing their special medical pay benefits under section 302. This legislation was within the authority of the Congress, and did not violate any right of Dr. Geiger, as government military (or civilian) personnel does not have a vested right to have future compensation remain at an existing level. *Cf. Crenshaw v. United States,* 134 U.S. 99, 105–06, 10 S.Ct. 431, 433, 33 L.Ed. 825 (1890); *Glidden Co. v. Zdanok,* 370 U.S. 530, 534, 82 S.Ct. 1459, 1464, 8 L.Ed.2d 671 (1962).

The plaintiff has not referred the court to any statute—and the court is not aware of any—giving him a legal right to additional pay for the final year of his residency training under the Army Civilian Sponsor Residency Training Program.

Accordingly, the plaintiff is not entitled to recover in this action.

### Conclusion

For the reasons previously stated, the court concludes that there is no genuine issue as to any material fact, and that the defendant is entitled to a judgment as a matter of law.

The defendant's motion for summary judgment is therefore granted, and the plaintiff's cross-motion for summary judgment is denied.

The complaint will be dismissed.

IT IS SO ORDERED.