David J. FLETCHER, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 345–87C.

United States Claims Court.

April 22, 1988.

David J. Fletcher, pro se.

Jeanne A. Anderson, Washington, D.C., with whom was Asst. Atty. Gen. Richard K. Willard, for defendant. David M. Cohen, Director, Thomas W. Petersen, Asst. Director, Lt. Colonel William C. Kirk and Major Paul K. Cascio, Office of the Judge Advocate General, Dept. of the Army, of counsel.

## OPINION

NAPIER, Judge:

This case comes before the Court on "Defendant's Motion to Dismiss" for lack of jurisdiction and for failure to state a claim upon which relief may be granted, pursuant to Rule 12(b)(1) of this Court.

Plaintiff, David J. Fletcher, a physician and former medical officer in the United States Army seeks to recover medical additional special pay for military service served while plaintiff was simultaneously seeking discharge from the military as a conscientious objector.

Having reviewed the submissions of the parties, the relevant statute and its legislative history and the relevant case law, this Court concludes that the defendant's motion must be granted and that plaintiff's complaint must be dismissed.

### Facts

Medical additional special pay (MASP) is variable special pay which is provided for medical officers of the armed forces pursuant to 37 U.S.C. § 302. The pertinent provisions of § 302 regarding entitlement to MASP are as follows:

§ 302(a)(1)

An officer * * * of the Medical Corps of the Army * * * who is on active duty * * * for a period of not less than one year is entitled to special pay in accordance with this subsection.

§ 302(a)(4)(A)

Subject to subsection (c) * * * an officer * * * who has less than ten years of creditable service is entitled to additional special pay of $9,000 for any twelve month period. * * *

§ 302(c)(1)

An officer may not be paid additional special pay under subsection (a)(4) * * * for any twelve-month period unless the officer first executes a written agreement under which the officer agrees to remain on active duty for a period of not less than one year beginning on the date the officer accepts the award of such special pay.

The pertinent provisions of § 302 regarding payment, as well as repayment, of MASP are as follows:

§ 302(e)

Special pay payable to an officer under subsection (a)(4) * * * of this section shall be paid annually at the beginning of the twelve-month period for which the officer is entitled to such payment.

§ 302(c)(2)

[T]he Secretary of the military department concerned may terminate at any time an officer's entitlement to the special pay authorized by subsection (a)(4) * * * of this section. If such entitlement is terminated, the officer concerned is entitled to be paid such special pay only for the part of the period of active duty that he served, and he may be required to refund any amount in excess of that entitlement.

§ 302(f)

An officer who voluntarily terminates service on active duty before the end of the period for which a payment was made to such officer under subsection (a)(4) or (b)(1) of this section shall refund to the United States an amount which bears the same ratio to the amount paid to such officer as the unserved part of such period bears to the total period for which the payment was made.

Plaintiff, David J. Fletcher, served on active duty in the United States Army as a physician, from June 12, 1980, to June 9, 1986. Pursuant to 37 U.S.C. § 302(a)(4)(A), plaintiff was eligible for, and received MASP, which he properly applied for, for the period of 1 July 1983 to 30 June 1984.

After serving over 3 years in the United States Army, plaintiff became a conscientious objector to war in December 1983 and subsequently requested a discharge. His request was denied by the Army. On June 6, 1986, the United States District Court, Western District of Washington at Tacoma, issued a Writ of Habeas Corpus, effectively releasing plaintiff from his military status. Plaintiff was honorably discharged on June 9, 1986. Plaintiff's final officer evaluation report indicated that he had "exercised professional competence in his assigned duties" and was "a highly competent, accomplished and productive physician."

Prior to his discharge, plaintiff had executed two written agreements to receive MASP for the periods of 1 July 1984 to 30 June 1985 and 1 July 1985 to 30 June 1986.

Plaintiff did not receive MASP during these periods and it is these agreements which give rise to this suit.

Specifically, plaintiff executed the first agreement on June 11, 1984, but, as advised by the Madigan Army Medical Center command structure so as not to vitiate his request for discharge as a conscientious objector, did not process it. Previously, on May 4, 1984, plaintiff signed a document in which he declined to accept MASP payments for which he was eligible on July 1, 1984. This document stated in pertinent part:

> I decline to accept Medical Additional Special Pay which is due me on 1 July 1984, but I understand that I have the option of accepting such pay in the future if still eligible. I understand that if I accept this pay in the future, the date I sign the agreement will become the effective date of the agreement.

When plaintiff subsequently processed his request for MASP (for the period 1 July 1984 to 30 June 1985) on June 13, 1985, he attached a cover document which stated:

> 2. I did not turn in this signed agreement until now because I could not ethically receive the bonus since I submitted a request for release from active duty on 26 January 1984 with my application for conscientious objector status. This initial request for discharge was denied and I have continued to serve on active duty.
> 3. Though I have resubmitted my resignation with my reapplication for conscientious objector status on 3 May 1985, I will undoubtedly be on active duty on 30 June 1985 because the process for my reapplication has yet commenced. Thus, I am entitled to receive the bonus for the period 1 July 1984–30 June 1985 since I will have completed the agreement and have earned the amountment [sic] as part of my compensation for service which I have provided despite grave conscientious misgivings.
> 4. At this point, I have not elected to receive the bonus for the upcoming period 1 July 1985–30 June 1986 since I have resubmitted my resignation on grounds of conscientious objection.

Plaintiff's request for MASP for the period 1 July 1984 to 30 June 1985 was denied.

On April 15, 1985, plaintiff executed but did not process the second agreement for MASP pay for the period 1 July 1985 to 30 June 1986. As of June 13, 1985, plaintiff, as stated above, had not elected to receive MASP for this period since he had resubmitted his request for discharge as a conscientious objector. However, on July 1, 1985, plaintiff signed and submitted his request for MASP for the period 1 July 1985 to 30 June 1986. Payment was not made as required under § 302(e) despite the fact that plaintiff made "repeated attempts to collect the MASP pay." Plaintiff served on active duty until June 9, 1986, when he was honorably discharged. Plaintiff was discharged 21 days before he completed the one year MASP period.

Plaintiff claims that his commander, Lt. Colonel Dewey Miller, and the command structure at Madigan Army Medical Center made oral statements indicating that plaintiff was eligible to collect MASP in the future if plaintiff served on active duty during the MASP period despite the fact that plaintiff failed to "first execute a written agreement" as required by § 302(c)(1).

Plaintiff claims that he made numerous requests for the MASP pay, both before and after his discharge. His final request to Lt. Colonel Miller was made in a certified, return receipt letter of June 30, 1986. Plaintiff made a final request to the Army on August 19, 1986, in a letter to the commander of MILPERCEN (Military Personnel Center).

Plaintiff demands an award of $18,000, plus interest, against the United States for nonpayment of MASP allegedly earned from July 1984 to June 1986.

## Discussion

Plaintiff argues that he has a right to an economic benefit conferred by 37 U.S.C. § 302, and alleges that the Government "breached the benefit it had promised in writing and orally would be given if service was completed."

Defendant, pursuant to RUSCC 12(b)(1), requests that the Court dismiss plaintiff's complaint for lack of jurisdiction and for failure to state a claim upon which relief may be granted. Defendant argues that in the absence of some presently due monetary entitlement, this Court lacks jurisdiction to entertain plaintiff's claim and states that plaintiff's *post facto* claim for payment pursuant to a statute that requires as a prerequisite, unconditional agreement of military service, fails to state a claim cognizable under the Tucker Act. In addition, defendant argues that by requesting a discharge while simultaneously seeking MASP, plaintiff imposed a disqualifying condition upon his service which was contrary to the statutory requirement that he agree, unconditionally, to serve not less than one year in order to qualify for MASP payments.

In 1974, Congress amended Chapter 5 of Title 37, United States Code, to revise the special pay structure relating to medical officers of the uniformed services. Pub.L. No. 93–274, 88 Stat. 94 (1974), *reprinted in* 1974 U.S.Code Cong. & Admin.News 103.

The legislative history of the special pay provisions makes it clear that the purpose of MASP is to attract and retain medical officers. The House Report accompanying Pub.L. No. 93–274, in a section entitled "Purpose of the Bill," states:

> The purpose of the bill is to increase the pay differential provided to medical * * * officers in the uniformed services in an attempt to meet the severe problems facing those services in attracting health professionals in an all volunteer environment.

H.R.Rep. No. 883, 93rd Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Admin.News 2923, 2925.

In addition, the report states:

> Since World War II retention of military health professionals has been one of the most difficult personnel problems of the uniformed services.

*Id.* at 2925.

> The bill provides permissive authority to pay a bonus * * * for each additional year of service that the person agrees to continue on active service.

*Id.* at 2926.

Accordingly, as a statutory prerequisite, "an officer may not be paid additional special pay * * * for any twelve month period unless the officer *first executes a written agreement* under which the officer *agrees to remain on active duty* for a period of *not less than one year* beginning on the date the officer accepts the award of such special pay." 37 U.S.C. § 302(a)(1) (emphasis added).

■ Despite his eligibility for MASP (pursuant to 37 U.S.C. § 302(a)(4)(A)), plaintiff failed to meet the explicit statutory requirements of section 302(c)(1). Plaintiff executed the written request for MASP for the period of 1 July 1984 to 30 June 1985, on June 11, 1984, and agreed to "remain on active duty for a continuous period of one year." However, plaintiff did not process his request until June 13, 1985, stating that he believed that he could not ethically receive the bonus since he submitted a request for release from active duty on January 26, 1984, on the grounds that he was a conscientious objector. Plaintiff's initial request for discharge was denied and he continued serving on active duty.

Although plaintiff was on active duty on June 30, 1985, one year after the MASP period at issue began, he did not meet the statutory requirement which states that one must first execute a written agreement agreeing to remain on active duty for one year after accepting the award. The Court recognizes and appreciates Dr. Fletcher's candor with regard to the circumstances surrounding the MASP agreement in question; however, plaintiff's request for MASP for the period 1 July 1984 to 30 June 1985 must be denied. It can be viewed only as an attempt to obviate the plain language of the statute. *See* 37 U.S.C. § 302(a)(1), *supra.*

■ As stated previously, plaintiff's second written request for MASP at issue here was filed in a timely manner on July 1, 1985. However, plaintiff was not awarded the MASP he claims he is entitled to. Nothing in the record presented to the

780

Court indicates why the Army failed to pay plaintiff.

Although plaintiff timely filed his written request for MASP, plaintiff failed to remain on active duty for the entire one year period as required under the statute. *See* 37 U.S.C. § 302(c)(1). The MASP statute contemplates situations in which officers may receive MASP yet fail to complete the requisite one year service requirement.[1] Plaintiff argues that by providing for a refund in such situations, Congress intended for MASP to be mandatory, not discretionary on the part of the Army. However, plaintiff's claim must fail for a more fundamental reason. At the same time plaintiff processed his request for MASP for the period 1 July 1985 to 30 June 1986, he was continuing to seek discharge from the Army as a conscientious objector. By requesting discharge, plaintiff contradicted his statement agreeing to "remain on active duty for a continuous period of one year" as required by the statute.

It is obvious that plaintiff was aware of the requirements of the statute from his correspondence of June 13, 1985, where he stated "[a]t this point, I have not elected to receive the bonus for the upcoming period 1 July 1985–30 June 1986 since I have resubmitted my resignation on grounds of conscientious objection."

The legislative history of the MASP statute makes it clear that the purpose of MASP is to provide an incentive to medical officers to remain in the military and to provide a bonus to those who agree to remain on active duty for a period of at least one year. It is clear from the record before the Court that plaintiff did not intend to serve for one year, from 1 July 1985 to 30 June 1986, if his request for discharge was granted.

■ Plaintiff's claims are not compensable under the Tucker Act, 28 U.S.C. § 1491. The Tucker Act states in pertinent part:

The United States Claims Court shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages for cases not sounding in tort.

Yet, the Tucker Act "is only a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages." *United States v. Testan*, 424 U.S. 392, 398, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976). Not every claim involving the Constitution, a federal statute, or a regulation is recognizable under the Tucker Act. The claim must be one for money damages against the United States, *see United States v. King*, 395 U.S. 1, 2–3, 89 S.Ct. 1501, 1502, 23 L.Ed.2d 52 (1969), and the claimant must demonstrate that the source of substantive law he relies upon "can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained." *United States v. Mitchell*, 463 U.S. 206, 216–17, 103 S.Ct. 2961, 2968, 77 L.Ed.2d 580 (1983). Plaintiff has based its claim for damages on the medical pay statute, but has failed to show any basis to mandate compensation.

■ Fair interpretation necessarily depends on the facts and substantive law of each case.

The Constitution, a statute, or a regulation should be fairly "interpreted as mandating compensation" when

(1) A right to a benefit is thereby conferred;

(2) The benefit conferred is economic in nature;

(3) The Government breaches its duty to confer that benefit.

*Anderson v. United States*, 5 Cl.Ct. 573, 577 (1984), *aff'd*, 764 F.2d 849 (Fed.Cir. 1985). Plaintiff has not shown that these criteria have been satisfied because he has not met the statutory requirements necessary for a benefit to be conferred upon

---

1. 37 U.S.C. § 302(c)(2) and 302(f) recognize that an officer's entitlement to MASP may terminate prior to the end of the one year period. Both subsections require that the officer return a pro rata amount of the MASP for the period of active duty not completed.

him. As the Court of Claims said in *Kinney v. United States*, 124 Ct.Cl. 142, 147, 109 F.Supp. 429 (1953):

It is our province only to interpret the statute as enacted, and to find the intent of the Congress as expressed in its terms. The statute, as we see it, is as clear as the English language can make it.

Quite simply, plaintiff's claim does not fall within the provisions set forth by the statute. Thus, plaintiff's claim is not compensable under the Tucker Act.

Plaintiff's reliance on the May 14, 1984, document declining MASP and the two requests for MASP as well as the alleged oral assurances from his commander and from Madigan Army Medical Center command structure pertaining to the option of accepting MASP pay in the future, is not persuasive.

■ The principles of contract law are not applicable to questions concerning the status of military personnel and the entitlement of such personnel to pay for military services. *Geiger v. United States*, 3 Cl.Ct. 647 (1983); *Bell v. United States*, 366 U.S. 393, 81 S.Ct. 1230, 6 L.Ed.2d 365 (1961); *United States v. Larionoff*, 431 U.S. 864, 97 S.Ct. 2150, 53 L.Ed.2d 48 (1977). Rather, entitlement to military pay is created and governed entirely by statute. *Werner v. United States*, 226 Ct.Cl. 462, 642 F.2d 404 (1981).

In addition, plaintiff has not cited to, nor is the Court aware of any authority granting discretion to any officer of the armed forces to award MASP to medical officers who fail to meet the criteria set forth in 37 U.S.C. § 302 and discussed above.

■ In a recent Supreme Court decision on equitable estoppel, the United States was not estopped from recovering federal funds that had been improperly disbursed by a nonprofit provider of health care services even though the provider relied upon the oral advice of a Government agent. In *Heckler v. Community Health Services*, 467 U.S. 51, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984), the Supreme Court held that a private party could not prevail upon a claim of equitable estoppel without at least demonstrating that the traditional elements of an estoppel were present. The Supreme Court described these elements in summary:

Thus, the party claiming the estoppel must have relied on its adversary's conduct "in such a manner as to change his position for the worse," and that *reliance must have been reasonable in that the party claiming estoppel did not know nor should it have known that its adversary's conduct was misleading.*

467 U.S. at 59, 104 S.Ct. at 2223, footnotes omitted (emphasis added).

Further, the Court stated:

Justice Holmes wrote: "Men must turn square corners when they deal with the Government." *Rock Island, A. & L. R. Co. v. United States*, 254 U.S. 141, 143 [41 S.Ct. 55, 56, 65 L.Ed. 188] (1920). This observation has its greatest force when a private party seeks to spend the Government's money. Protection of the public fisc requires that those who seek public funds act with scrupulous regard for the requirements of the law; respondent could expect no less than to be held to the most demanding standards in its quest for public funds. This is consistent with the general rule that those who deal with the Government are expected to know the law and may not rely on the conduct of Government agents contrary to law.

467 U.S. at 63, 104 S.Ct. at 2225 (footnote omitted).

In further support of this proposition, the Supreme Court has stated:

The oft-quoted observation in *Rock Island, Arkansas & Louisiana Railroad Co. v. United States*, 254 U.S. 141, 143 [41 S.Ct. 55, 56, 65 L.Ed. 188] that "Men must turn square corners when they deal with the Government," does not reflect a callous outlook. It merely expresses the duty of all courts to observe the conditions defined by Congress for charging the public treasury.

**782**

Federal Crop Ins. Corp. v. Merrill, 332 U.S. 380, 385, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947).

In addition to reemphasizing the notion that equitable estoppel does not apply in situations in which the public fisc is threatened, the Supreme Court stated that equitable estoppel does not apply when a private party relies upon oral advice of a Government agent:

> It is not merely the possibility of fraud that undermines our confidence in the reliability of official action that is not confirmed or evidenced by a written instrument. Written advice, like a written judicial opinion, requires its author to reflect about the nature of the advice that is given to the citizen, and subjects that advice to the possibility of review, criticism, and reexamination. The necessity for ensuring that governmental agents stay within the lawful scope of their authority, and that those who seek public funds act with scrupulous exactitude, argues strongly for the conclusion that an estoppel cannot be erected on the basis of the oral advice.

> \*    \*    \*    \*    \*    \*

Heckler, 467 U.S. at 65, 104 S.Ct. at 2227.

In summary, the Supreme Court has never applied equitable against the Government and has indicated that it will not do so unless the private party demonstrates the traditional elements of estoppel. In addition, the Supreme Court has indicated that it will not tolerate estoppel claims that threaten the public fisc or are predicated upon oral advice.

### Conclusion

Plaintiffs claim for MASP cannot be granted and defendant's motion to dismiss must be allowed. The Clerk of the Court is directed to dismiss the complaint. No costs.