DAVID J. KURTI, M.D., Plaintiff-Appellant, *v.* FOX VALLEY RADIOLO-
GISTS, LTD., Defendant-Appellee.

Second District   No. 83—479

Opinion filed June 6, 1984.

934

Kathleen C. West and Frederick E. Roth, both of Hennessy, Dommermuth, Brestal, Cobine, Roth & West, of Naperville, for appellant.

John M. Myers, of Friedman & Koven, of Chicago, for appellee.

JUSTICE VAN DEUSEN delivered the opinion of the court:

Plaintiff, David J. Kurti, M.D., appeals from an order of the circuit court of Du Page County entering judgment against him and in favor of defendant, Fox Valley Radiologists, Ltd., following trial on plaintiff's complaint for wages allegedly due under a contract of employment. Plaintiff asserts that the trial court erroneously upheld the affirmative defense of fraud.

Defendant was a corporation with offices in Aurora, Illinois. Dr. Kenneth E. Hurst was defendant's president and sole shareholder. At the time of the firm's incorporation in 1971, approximately 85% of its business consisted of providing radiology services at Edward Hospital in Naperville. As of October 1981, the sole business of the defendant involved work at this hospital, where Dr. Hurst was head of the radiology department.

Plaintiff began working for defendant in July 1975 as a diagnostic radiologist. Plaintiff was employed pursuant to a written contract providing that he would be paid 45% of the corporation's yearly net income. Plaintiff's share was subsequently modified to 48%, and by 1981 plaintiff received an approximate monthly salary of $12,000. The contract further prohibited plaintiff from engaging in outside professional employment without defendant's consent.

On October 26, 1981, the board of directors of Edward Hospital voted to terminate its agreement with defendant for provision of radiology services following the required 30-day notice. The effect of this decision virtually put defendant out of business, reducing the corporation in essence to a collection center for accounts receivable. Dr. Hurst was informed of the decision of the hospital board on October

27, 1981, and on October 29 he gave plaintiff notice that the latter's employment was terminated as of December 31, 1981.

At the time Dr. Hurst notified plaintiff of his impending termination, plaintiff said nothing regarding his future plans. During the following month, plaintiff held discussions with officials both at Edward Hospital and at Aurora's Copley Hospital regarding the possibility of future employment. At Copley Hospital, Dr. Singh was receptive to plaintiff's interests and extended to him a verbal offer of employment to commence in January 1982. Dr. Singh asked plaintiff about working a few weekends in December to become familiar with the hospital. Plaintiff also called Mr. Ladley, a member of the board of directors at Edward Hospital, on two occasions during November. Plaintiff inquired regarding his chances of becoming the new chairman of radiology at that hospital. Ladley's response was negative, and plaintiff then called Dr. Doris, one of the leading contenders for the Edward chairmanship, to inquire regarding selection for a position as a staff radiologist. Dr. Doris did not provide plaintiff with either a positive or negative reply.

On November 20, 1981, plaintiff approached Dr. Hurst and asked him to sign a release which read: "Under the terms of the employment agreement between Fox Valley Radiologists and David J. Kurti, M.D., this is official permission and consent to engage in professional activities outside the employ of the corporation while said agreement remains in force." Plaintiff explained that he had been talking to Copley Hospital personnel, "and they had said they wanted me to work some weekends in December and that I would like official permission, and I handed him the paper for him [Dr. Hurst] to sign." Although plaintiff did not expressly request to have the release signed immediately, Dr. Hurst believed that plaintiff desired his prompt signature because approximately a week before, plaintiff had disclosed that he was having conversations with Dr. Singh and that Singh wanted plaintiff to work at Copley on weekends. Hurst signed the release without inquiring as to plaintiff's arrangements with Copley. Plaintiff did not mention any discussion with personnel at Edward Hospital. Hurst stated that he would not have signed a release permitting plaintiff to work at Edward because Hurst believed that Edward might not be able to replace his corporation as quickly as planned, and without another radiology service the hospital might be compelled to retain Fox Valley's services through December. Plaintiff gave nothing of value for the release. During this conversation, Hurst did not suggest that he needed plaintiff's services during December, nor did he say that plaintiff would have to work in December in order to be paid.

On November 27, 1981, while plaintiff was packing in preparation

for his departure from Edward Hospital, Dr. Doris called and asked plaintiff to remain as an employee. Plaintiff thereupon telephoned Dr. Hurst and stated that he was going to remain at Edward Hospital during December and work for Dr. Doris. Hurst replied that this would negate the release he had signed the previous week and that plaintiff would not be paid by defendant during December. Plaintiff protested that this was not fair and Hurst replied, "That's too bad."

Dr. Hurst did not request plaintiff to perform any work during December 1981. Plaintiff worked at Edward Hospital during that month and was paid $7,200. He thereafter brought suit against defendant for $12,000, the alleged amount of his December salary. Defendant answered, raising four affirmative defenses: fraud in inducing Dr. Hurst to sign the release, lack of consideration, pre-existing break of contract by plaintiff, and the doctrine of commercial frustration. In a letter of opinion, the trial court found that plaintiff's conduct was tantamount to fraud. Judgment was accordingly entered for defendant and this appeal followed.

The trial court's letter of opinion set out the following rationale for its holding that the release signed by Dr. Hurst was invalid on account of fraud:

> "Although the evidence is not clear that Plaintiff 'knew' on November 20, 1981, of employment with Edward Hospital, it can unquestionably be inferred, at some later time, his acceptance of employment with Edward Hospital would require disclosure of that fact. Plaintiff was then under an affirmative duty to disclose his new professional relationship with Edward Hospital during the balance of the employment contract life. Silence on the part of the Plaintiff at this juncture, when he was [sic] a duty to speak, is tantamount to fraud, voiding the previous consent of November 20, 1981."

Plaintiff contends on appeal that he had no duty, akin to a fiduciary duty, to disclose to defendant prior to November 20, 1981, the mere fact that he had had employment negotiations with Edward Hospital. Plaintiff, therefore, concludes that his conduct in requesting the release cannot be tantamount to fraud. Alternatively, he claims that defendant is unable to show any damages arising from the alleged misrepresentation, and consequently an essential element of a fraud claim is absent.

To establish a cause of action for fraudulent misrepresentation, there must have been a false statement of material fact which was known or believed to be false by the maker, an intent to induce another party to act, a justified reliance by the other party upon the

truth of the statement, and damage to the other party resulting from such reliance. (*Soules v. General Motors Corp.* (1980), 79 Ill. 2d 282, 286.) In order for concealment of facts to constitute a fraud, it must be shown to have been done with the intention to deceive under circumstances creating an opportunity and duty to speak. (*Semmens v. Semmens* (1979), 77 Ill. App. 3d 936, 940; *Dendrinos v. Dendrinos* (1978), 58 Ill. App. 3d 639, 642.) A statement, although technically true, may nevertheless be fraudulent where it omits qualifying material, for a half-truth is sometimes more misleading than an outright lie. (*Perlman v. Time, Inc.* (1978), 64 Ill. App. 3d 190, 195.) Moreover, it is essential to a finding of fraud that the plaintiff has been induced by the fraud to act to his detriment. (*Macaluso v. Jenkins* (1981), 95 Ill. App. 3d 461, 469.) In addition to actual fraud, a misrepresentation may give rise to constructive fraud where there has been a breach of duty arising out of a fiduciary or confidential relationship. (*Paskas v. Illini Federal Savings & Loan Association* (1982), 109 Ill. App. 3d 24, 30.) Even where a fiduciary relationship does not exist as a matter of law, it may nonetheless arise where trust and confidence, by reason of friendship, agency and experience, are reposed by one person in another so the latter gains influence and superiority over the former. (*Gary-Wheaton Bank v. Burt* (1982), 104 Ill. App. 3d 767, 774.) However, the existence of a friendship does not of itself establish the existence of such a relationship, nor does one person's assistance of another in business affairs. See *Gary-Wheaton Bank v. Burt* (1982), 104 Ill. App. 3d 767; see, *e.g., Carey Electric Contracting, Inc. v. First National Bank of Elgin* (1979), 74 Ill. App. 3d 233.

In the instant case, plaintiff denies that he owed defendant any fiduciary duty to disclose the extent of his inquiries into obtaining employment at area hospitals. He claims that his relationship with Dr. Hurst involved no special trust or influence which would have given rise to a confidential relationship. He particularly asserts the inapplicability of a fiduciary relationship when the manifest purpose of his release was to allow him to seek other employment at an area hospital, obviously involving at least a degree of competition with Dr. Hurst in the provision of professional services. Defendant, in turn, points to the long-standing personal and professional relationship between the parties and their arrangement to share business profits as establishing the type of special confidence which required the fullest degree of disclosure on plaintiff's part in seeking a release.

■ The existence of a confidential relationship is not precluded by the fact that plaintiff had been notified of his impending termination, or that he was seeking a release for the purpose of securing new

employment which would almost inevitably be in competition with Dr. Hurst. Indeed, the need to prevent a fiduciary from taking improper advantage of the dislocation attendant upon the ending of a confidential relationship requires that fiduciary principles be observed so long as the relationship continues. However, the facts do not support a finding of a fiduciary relationship between the parties in this case. Despite the length of their association and plaintiff's participation in the defendant corporation's profits, there is no indication that plaintiff participated in the corporation's management or that he enjoyed access to confidential information. The association of physicians in professional medical practice necessarily implies that each participant reposes his trust in the other, but there is no suggestion in the present record that this trust extended into the area of the corporation's management or the marketing of its services. In sum, there is no basis upon which plaintiff can be charged with a duty to disclose, at the time he requested his contract release, his inquiries and negotiations regarding alternative employment.

■ While we agree with defendant that the potential prejudice to its short-term retention at Edward Hospital was sufficient to satisfy the damage requirement in a fraud claim, the plaintiff did not make a false representation of a material fact sufficient to warrant a finding of fraud. At the time he requested Dr. Hurst to sign the release, plaintiff stated that he wished to work weekends at Copley Hospital but did not disclose that he had made inquiries regarding work at Edward Hospital. However, very little had yet developed from these inquiries; plaintiff had neither been promised employment at Edward, nor been given any indication as to when such employment might commence. Plaintiff had been told that an employment decision would be made by the new chairman of radiology, but the chairman had not been chosen at the time of plaintiff's inquiry. Further, plaintiff had spoken only to one of the two leading candidates for the chairmanship. Thus, plaintiff's discussions with Edward Hospital were only at a preliminary stage, while Copley Hospital had made both a definite offer of employment and a request for plaintiff's part-time services in December. The uncertainty of plaintiff's position at Edward Hospital was confirmed by the fact that he was packing his possessions to leave that hospital when he was offered employment there.

■ The law in Illinois is well settled that:

"[A] statement which is technically true as far as it goes may nevertheless be fraudulent, where it is misleading because it does not state matters which materially qualify the statement as made.

* * *

It is also well established that where one has made a statement which at that time is true but subsequently acquires new information which makes it untrue or misleading, he must disclose such information to anyone whom he knows to be acting on the basis of the original statement—or be guilty of fraud or deceit." (*St. Joseph Hospital v. Corbetta Construction Co.* (1974), 21 Ill. App. 3d 925, 952-53.)

Given the comparative indefiniteness of plaintiff's prospects of employment at Edward Hospital, his undisclosed discussions with personnel there did not so materially qualify plaintiff's claim of employment at Copley as to reduce it to the level of a half-truth. Moreover, it is undisputed that plaintiff informed Dr. Hurst of Edward's offer on the same day it was received. Accordingly, we conclude that the trial court erroneously found plaintiff guilty of fraudulent conduct in obtaining the release.

Defendant correctly asserts, however, that a reviewing court may sustain a trial court's judgment on any grounds supported by the record. (*Illinois Bell Telephone Co. v. Dynaweld, Inc.* (1979), 70 Ill. App. 3d 387, 394.) From this premise, defendant contends that there was sufficient evidence before the trial court on each of its other three affirmative defenses to sustain the trial court's judgment.

■ Defendant's first alternative assertion is that the release granted plaintiff was void because plaintiff gave no consideration for it. Defendant acknowledges that no consideration is necessary to support a waiver of a contract provision (*Business Development Services, Inc. v. Field Container Corp.* (1981), 96 Ill. App. 3d 834, 840), but it contends that no waiver may be found here. Specifically, defendant notes that a waiver has been defined as the intentional relinquishment of a known right, requiring both the knowledge that the right existed and the intent to relinquish it. (*Braden v. Weinert* (1981), 97 Ill. App. 3d 929, 937.) Because Dr. Hurst, when signing the release, was not accurately made aware of plaintiff's eventual place of employment, defendant claims that he cannot be said to have made an intentional relinquishment of a known right. This argument is without merit since the question of whether a waiver was in fact made does not negate the principle of law that consideration is not necessary to support a waiver of a contract provision. Thus, the release was not void for lack of consideration.

Defendant next contends that plaintiff was properly denied judgment in this cause because, when properly construed, the release only

permitted plaintiff to work at Copley Hospital and did not confer permission for plaintiff to work at Edward Hospital. Defendant claims that this construction of the release reflects the unmistakable intention of the parties as revealed in both the language of the written instrument and in the parties' contemporaneous conversation. Defendant suggests that the contemporaneous oral statement by plaintiff concerning his reasons for wanting the release should be construed together with the written terms, either as constituting the agreement in its entirety or as representing a contemporaneous oral modification of a written agreement. Alternatively, defendant construes the written release as ambiguous and requests resort to extrinsic evidence to clarify the ambiguity.

■■ The law recognizes that a contract may be partly written and partly oral. For purposes of the parol evidence rule, such a contract is considered an oral agreement. (*Watson Lumber Co. v. Mouser* (1975), 30 Ill. App. 3d 100, 103.) However, defendant's claim that the release in question may be viewed as a partially oral agreement must be rejected because there is no apparent incompleteness in the terms of the writing, and the asserted oral "term" would add a limitation on the place of employment not contained in the release. We are also unpersuaded by the authority cited by defendant (*Bank of Marion v. Robert "Chick" Fritz, Inc.* (1973), 9 Ill. App. 3d 102, *aff'd* (1974), 57 Ill. 2d 120), in support of its claim that the written language of the release was made subject to a contemporaneous modification. First, the evidence showed that plaintiff's oral request for the release actually preceded the execution of the written instrument. Moreover, while a written contract may subsequently be orally modified (see *Park v. Dealers Transit, Inc.* (7th Cir. 1979), 596 F.2d 203; *Mayer Paving & Asphalt Co. v. Carl A. Morse, Inc.* (1977), 48 Ill. App. 3d 73), giving effect to contemporaneous oral modifications of apparently complete written instruments would be potentially destructive of certainty in the interpretation of contracts and, according to some writers, would run afoul of the parol evidence rule. See J.D. Calamari & J.M. Perillo, Contracts sec. 3-2, at 100-01 (2d ed. 1977).

■■ We also dismiss defendant's alternative contention that interpretation of the agreement in accordance with the rules of contract construction results in a finding that the release is ambiguous. The release granted plaintiff consent "to engage in professional activities outside the corporation." A written contract is not rendered ambiguous merely because the parties do not agree upon the meaning of its terms; a contract is ambiguous only when the language employed is reasonably susceptible of more than one meaning. (*Wilson v. Illinois Benedictine College* (1983), 112 Ill. App. 3d 932, 937.) "When the language of a

contract is ambiguous or unclear so that the intentions of the parties cannot be discerned from the contract itself, extrinsic evidence may be considered to make a proper interpretation of the contract." (*Ninow v. Loughnane* (1981), 103 Ill. App. 3d 833, 839-40.) Further, previous agreements, negotiations and circumstances may be considered in determining the meaning of specific words and clauses. (*Martindell v. Lake Shore National Bank* (1958), 15 Ill.2d 272, 283.) While we agree with defendant that in the context of the release alone, the phrase "professional activity" is ambiguous, reference to the contract of employment and to the work of the defendant during the course of his employment makes unmistakably clear that the "professional activities" of plaintiff were those of diagnostic radiologist, physician, and surgeon. Moreover, there is no limitation in the release with reference to the geographical location where the plaintiff may engage in his professional activities, or for whom he may work. The release clearly and unequivocally permits plaintiff to engage in his professional activities without restriction as to the identity of any future employer or place of employment; resort to extrinsic evidence should not alter these unambiguous terms of the parties' written agreement.

Finally, defendant contends that plaintiff must be denied relief on account of the doctrine of commercial frustration; that is, the state of things upon whose existence the parties' contract was premised has ceased to exist because of an unforeseeable frustrating event which has virtually destroyed the value of defendant's counterperformance. (See *Smith v. Roberts* (1977), 54 Ill. App. 3d 910.) Defendant asserts that its continued ability to employ plaintiff pursuant to the contract of employment was rendered impossible by the virtual collapse of its business after November 1981. This claim overlooks the fact that defendant's corporate existence did continue after that time, and defendant apparently had income during that period attributable to the collection of accounts receivable. We therefore reject defendant's claim that because of the termination of its service arrangement with Edward Hospital, it was unable to retain plaintiff as a salaried employee during December.

The judgment of the trial court in favor of the defendant and against the plaintiff is reversed and the matter is remanded for a new trial.

Reversed and remanded for new trial.

NASH and UNVERZAGT, JJ., concur.