CHICAGO WHITE METAL CASTING, INC., Plaintiff-Appellant, v. ANDREA EMERY TREIBER, Defendant-Appellee.

Second District   No. 2—86—1014

Opinion filed November 19, 1987.

Ira Gould, of Holleb & Coff, of Chicago, and Louis A. Varchetto, of Guerard, Kalina, Musial, Ulrich & Varchetto, of Wheaton (Lori A. Schaffel, of counsel), for appellant.

Henry J. Burt, Jr., of Rathje, Woodward, Dyer & Burt, of Wheaton (Reese J. Peck, of counsel), for appellee.

JUSTICE NASH delivered the opinion of the court:

Plaintiff, Chicago White Metal Casting, Inc., appeals from a directed verdict entered in favor of defendant, Andrea E. Treiber, and contends that the trial court erred in certain evidentiary rulings, and in directing the verdict for defendant.

The dispute upon which this appeal centers is the ownership of $33,000 representing the cash surrender value of a life insurance policy issued by The Penn Mutual Life Insurance Company. The insurance company made its check payable to defendant, as owner and beneficiary of the policy, and plaintiff seeks recovery of $27,676.40 of that sum as a refund of premiums paid by it to insure the life of its former employee, Roland Treiber, who is also defendant's former husband.

Plaintiff purchased the insurance policy in 1974 and, as relevant to this case, its terms provided as follows:

"Policy No. 6074279

Insured: Roland J. Treiber

The owner and the beneficiary of each policy numbered above are designated as provided below ***.

### PART I. OWNER

All privileges of ownership *** are vested in the Insured unless herein otherwise provided. If not in the Insured, privileges of ownership are as stated below in this Part I.

Privileges of ownership are vested in ANDREA TREIBER, wife of the insured, while living, and thereafter in the executors or administrators of said wife.

\* \* \*

### PART II. BENEFICIARY OF BENEFITS NOT RELATED TO INSURED'S DEATH
\* \* \*

Any policy benefit which consists of a payment of proceeds or an income payment ***, not related to death of the Insured, shall be paid to the Insured unless herein provided. If not payable to the Insured such payment shall be paid as stated below in this Part II.

[No exceptions noted]
\* \* \*

### PART III. BENEFICIARY OF ANY BENEFIT PAYABLE BY REASON OF INSURED'S DEATH

Any proceeds *** payable by reason of the death of the Insured and not distributable after his death in accordance with Part II above, shall be paid as follows:

An amount of proceeds equal to the amount which CHICAGO WHITE METAL CASTINGS, INC., of Chicago, Illinois, hereinafter termed 'employer', its successors or assigns, shall (by a statement filed with the insurance company) claim to be due employer under an agreement between employer and insured relating to the payment of premiums of this policy shall be paid in one sum to employer. Acceptance of such payment by employer, its successors or assigns, shall constitute a release of all further interest in the policy proceeds. The insurance company shall be under no obligation to see to compliance by employer or insured with the provisions of such agreement, and may in good faith rely upon such statement of any amount due em-

ployer under such agreement.

The balance of proceeds or the entire proceeds if no payment is due employer under the preceding paragraph shall be paid in one sum to ANDREA TREIBER, wife of the insured, if she survives the insured, otherwise in one sum to the executors or administrators of said wife."

Other portions of the insurance policy defined "privileges of ownership" as including the right "to receive any benefits under the policy," and stated that the owner of the policy could surrender the policy for its cash value. The "POLICY SPECIFICATIONS" part of the policy stated that the life of Roland J. Treiber was insured for $200,000, for an annual premium of $4,000. The "General Provisions" section of the policy stated that the policy, and the application for it, constituted the entire contract and that no agent was authorized to modify, alter or enlarge the contract.

From May 1974 to November 1983, plaintiff carried the cash surrender value, or the amount of premium payments it made, as an asset on its books, and paid total premiums on the policy in the amount of $27,676.40. In 1983, Roland Treiber left the employment of plaintiff, and plaintiff decided to surrender the policy. Walter Treiber, plaintiff's vice-president, called defendant, who was then divorced from Roland Treiber, and asked her to sign an authorization form for surrender of the policy. Defendant did so, and subsequently the insurance company issued and forwarded to plaintiff a check payable to her in the amount of $33,000, which represented the cash surrender value of the policy.

On January 1, 1984, Walter Treiber called defendant and informed her that plaintiff had received a check for surrender of the policy and asked her to endorse the check to plaintiff and return it. She initially agreed to do so, but upon receiving the check she wondered why it was payable to her. Defendant contacted her attorney, who advised her to keep the money since she was the named owner of the policy.

Plaintiff subsequently commenced this action against defendant seeking recovery of the premiums paid in counts sounding in conversion, promissory estoppel for defendant's failure to endorse and return the check, and for unjust enrichment.

During plaintiff's opening statement to the jury defendant objected to plaintiff's reference to evidence of discussions which had taken place between Roland Treiber, Walter Treiber, and Morton Gainer, an insurance broker for The Penn Mutual Life Insurance Company, concerning the provisions of the policy. Defendant asserted three grounds for the objection: (1) the parol evidence rule; (2) the

fact that defendant was not present at these conversations and therefore not bound by any oral agreement; and (3) the hearsay rule.

The trial court conducted a conference in chambers with respect to the objections and, after hearing arguments, ruled that the parol evidence rule barred any evidence of prior negotiations and conversations concerning the terms of the insurance policy; that since defendant was not a party to the conversations between the Treibers and the insurance agent, Morton Gainer, she was not bound by any separate agreement made between them; and that Gainer's statements were being offered for the truth of the matter asserted and were thus barred by the hearsay rule. Plaintiff's counsel requested that he be given the opportunity to make an offer of proof outside the presence of the jury, and stated that if the trial court did not allow parol evidence to explain the insurance policy, it would be futile for plaintiff to proceed with its case.

Plaintiff's offer of proof consisted of the testimony of Walter Treiber, Roland Treiber, defendant, and Peter Sundholm, an agent of The Penn Mutual Insurance Company. Walter Treiber testified, as an offer of proof, that in 1974, he and Roland Treiber met with Gainer to discuss the purchase of life insurance policies on certain of plaintiff's employees. Walter Treiber stated that Gainer recommended a "split-dollar" policy as a vehicle for estate planning, whereby plaintiff would be reimbursed for the premiums it paid on the policy upon termination of the policy because of the death of the insured or upon surrender of the policy. Based on Gainer's recommendations, plaintiff, through Walter and Roland Treiber, agreed to the issuance of the policy on these terms. Roland Treiber corroborated the testimony of Walter Treiber as to the discussions with Gainer, and stated that it was his understanding that plaintiff was to be reimbursed for the premiums upon either his death or the surrender of the policy.

Peter Sundholm testified that he was the general agent for The Penn Mutual Life Insurance Company responsible for selling and servicing life insurance in Chicago and had serviced plaintiff's account since 1983. He explained that the "split-dollar" arrangement is for estate planning and tax purposes under which the corporation uses its money to pay for the policy so that the premiums are not taxed as a benefit to the insured or owner of the policy and that the tax savings to the insured or owner would be defeated unless the corporation was later reimbursed for the premiums. Sundholm testified that the split-dollar language was specifically placed in Part III of the owner and beneficiary designation portion of the life insurance policy in order to establish the interest of the corporation in that portion of the in-

sured's death benefits representing the premiums paid. Sundholm explained that, in a split-dollar program, the payments are a lien against the cash value of the policy which constitute an incident of ownership to the insured, but for reimbursement to the employer, the premiums would be included in the insured's estate and would be taxed to the spouse as the third-party owner. For this reason, there is purposely no reference to the split-dollar arrangement in Part II of the owner and beneficiary portion of the policy, and the split-dollar arrangement is only referred to in Part III and is created by a separate agreement between the employer and the employee. The agreement between the employer and employee is usually made prior to the issuance of the written policy and defines the terms of the split-dollar arrangement. Although this agreement is often in writing, the insurance company does not get a copy of it and is not responsible to enforce the agreement between employer and employee. According to Sundholm, when the policy is surrendered, the insurance company will issue a check for the cash surrender value to the named owner, and it is for the employer and employee to determine what portion of the premiums belongs to the corporation. (In oral argument in this court, plaintiff acknowledged that no written "agreement" existed, but that its terms were as stated by the witnesses in the offer of proof.)

After arguments by counsel, the trial court found that the policy was unambiguous and that defendant, as owner, was entitled to the cash value upon surrender. The court also found that the parol evidence and hearsay rules precluded the testimony as to the discussion the Treibers had with the insurance agent prior to the issuance of the policy. The trial court further determined that even if the language of Part III, on which plaintiff relied, was considered to be ambiguous, that section was not applicable in this case since it expressly applies only in the event of the insured's death. The trial court also found that because defendant was the named owner of the policy and was not a party to any separate agreement between the employer and employee, she was not bound by their agreement.

Based on the trial court's rulings, the plaintiff rested its case without presenting evidence. Defendant's motion for a directed verdict was granted, and this appeal followed.

■ Plaintiff first contends that defendant was, in fact, a party to the insurance contract and bound by its terms. We agree. Insurance polices are contracts (*State Farm Mutual Automobile Insurance Co. v. Salerno* (1984), 121 Ill. App. 3d 384, 385, 459 N.E.2d 1075), and when a third person is the beneficiary of an insurance policy, the contract is a third-party beneficiary contract. (1 G. Couch, Insurance

§1.4, at 8-9 (2d ed. 1984).) A person is a third-party beneficiary of a contract if the parties to the contract, or at least the promisee, intended that the agreement confer a benefit on the third party. (*Bates & Rogers Construction Corp. v. Greeley & Hansen* (1985), 109 Ill. 2d 225, 232, 486 N.E.2d 902.) It is apparent that defendant was a third-party beneficiary of the life insurance contract in this case.

Also, we agree with plaintiff that a party relying on a third-party beneficiary theory must take the contract as the original parties made it and is bound by all of its provisions. (*L. B. Herbst Corp. v. Northern Illinois Corp.* (1968), 99 Ill. App. 2d 101, 105, 241 N.E.2d 125.) In this case, defendant was bound by the contract Roland Treiber made with the insurance company, and the trial court erred in finding that defendant was not a privy to a party to the insurance contract thus precluding inquiry into the terms of the insurance contract on that ground.

Plaintiff next contends that the trial court erred in finding that the parol evidence rule prohibited the admission of the testimony of the Treibers as to what the insurance agent told them regarding the provisions of the life insurance policy. We do not agree.

The parol evidence rule applies where the controversy is between parties to the instrument or their privies. (*Roth v. Meeker* (1979), 72 Ill. App. 3d 66, 75, 389 N.E.2d 1248.) As defendant was a third-party beneficiary and privy to a party, she may invoke the rule in this case. See R. Hunter, Trial Handbook for Illinois Lawyers §73.6, at 1082 (5th ed. 1983).

Under the parol evidence rule, if an instrument appears complete, certain, and unambiguous, then parol evidence of a prior or contemporaneous agreement is inadmissible to vary the terms of that instrument. (*McKown v. Davis* (1983), 118 Ill. App. 3d 315, 317, 454 N.E.2d 1086.) The purpose of the rule is to foster certainty in the interpretation of contracts (*Kurti v. Fox Valley Radiologists, Ltd.* (1984), 124 Ill. App. 3d 933, 941, 464 N.E.2d 1219), and parol evidence is not admissible to vary the terms of a written contract for insurance by showing what was said before or at the time of its execution. (*Richer v. Catholic Order of Foresters* (1951), 344 Ill. App. 200, 203, 100 N.E.2d 807.) The meaning of an unambiguous instrument and the intention of the parties must be determined from the face of the document without the assistance of parol evidence and other extrinsic aids. *Kolar v. Ray* (1986), 142 Ill. App. 3d 912, 916, 492 N.E.2d 899.

Plaintiff relies upon Part III of the owner and beneficiary designation portion of the life insurance contract and argues that the

parol evidence rule does not apply here since the contract was incomplete. The threshold question for the application of the rule is whether the writing was intended by the parties to be a final and complete expression of the entire agreement. The question of integration of a writing is one of law, and if the contract imports on its face to be complete expression of the whole agreement, it is presumed that the parties introduced into it every material item, and parol evidence cannot be admitted to add another term to the agreement. (*Pecora v. Szabo* (1981), 94 Ill. App. 3d 57, 63, 418 N.E.2d 431, *appeal denied* (1981), 85 Ill. 2d 567.) Although Part III of the policy may here suggest that another agreement, that between the employer and employee, is contemplated should it be invoked, Part III is irrelevant in this case because the insured, Roland Treiber, is not dead and its provisions apply only upon the death of the insured. We conclude that the insurance policy, taken as a whole, falls within the presumption that it was intended as a complete expression of the contract.

■ Plaintiff, again relying upon Part III of the insurance policy, also argues that it is ambiguous. A contract is ambiguous only when the language used is reasonably susceptible of more than one meaning (*Kurti v. Fox Valley Radiologists* (1984), 124 Ill. App. 3d 933, 941, 464 N.E.2d 1219), and whether ambiguity exists is a question of law. (*Coney v. Rockford Life Insurance Co.* (1966), 67 Ill. App. 2d 395, 398, 214 N.E.2d 1.) In this case, the insurance contract clearly states who is entitled to the payment of benefits. If the payment of a benefit is made for a reason unrelated to the insured's death, the owner of the policy is paid, as the insurance company did here. Only where the insured has died will an agreement between the employer and the employee govern distribution of the premium funds. When the contract terms are clear and unambiguous, they must be given their ordinary and natural meaning, and parol evidence may not be considered to vary the meaning of the terms. *Hammel v. Ruby* (1985), 139 Ill. App. 3d 241, 247, 487 N.E.2d 409.

■ Plaintiff further contends, again based upon Part III of the insurance contract, that parol evidence should have been admitted to establish the collateral agreement which, plaintiff asserts, was incorporated into the contract. If a written contract makes reference to an antecedent or contemporaneous oral agreement, such oral agreement may be shown if it is not inconsistent with the written contract (*Bernard Klibanow & Co. v. Shafer* (1971), 2 Ill. App. 3d 392, 399, 276 N.E.2d 446); however, prior collateral oral agreements are inadmissible to contradict terms of a written instrument (*Thomas v. First National Bank* (1985), 134 Ill. App. 3d 192, 216, 479 N.E.2d 1014).

Here, even if we were to assume the applicability of Part III, which we cannot do as Roland Treiber is not deceased, the testimony relating the oral agreement between the Treibers and the insurance agent would contradict the provision of the insurance contract governing who was entitled to receive the cash value upon its surrender and would be inadmissible.

During oral argument plaintiff suggested that Roland Treiber, not his wife, should have received the benefits paid which were not related to the death of the insured because Part II of the "OWNER AND BENEFICIARY DESIGNATION" portion of the policy states that such benefits "shall be paid to the Insured unless herein provided." This argument ignores the fact that the insured, Roland Treiber, assigned all his privileges of ownership to his wife, the defendant. One of the privileges of ownership under the terms of the life insurance policy is the right to receive any benefits. Indeed, the insurance company so construed the policy and made the proceeds check payable to the wife. We agree with the interpretation of the policy provisions made by The Penn Mutual Life Insurance Company, which has no interest in who receives the cash surrender value of the policy, and must reject plaintiff's contention that the insured, not the defendant, should have received the proceeds on surrender of the policy.

■ We conclude that the trial court correctly found that the parol evidence rule precluded plaintiff from introducing evidence of the negotiations between the Treibers and their insurance agent.

■ Plaintiff has also argued that the Treibers' offer-of-proof testimony relating to their conversations with Gainer was not hearsay because it was not offered for the truth of the matter asserted. We disagree. Hearsay is an out-of-court statement offered for the truth of the matter asserted. (*Lundberg v. Church Farm, Inc.* (1986), 151 Ill. App. 3d 452, 458, 502 N.E.2d 806.) In cases where the intention of the parties is clearly relevant in the formation of the contract, or where the state of mind of the declarant or listener is relevant to a material issue in the case, then out-of-court statements regarding the agreement are not considered inadmissible hearsay. 151 Ill. App. 3d at 458-59.

■ Here, plaintiff asserts that Gainer's statements were offered merely to show the effect they had on the Treibers, namely that they caused the insurance contract to be issued. As defendant points out, however, Gainer's statements were, in fact, offered for the truth of the matter asserted since only then were they relevant to a material issue in the case. The issue in this case was the terms of the insur-

ance contract the parties entered into, not why they did so.

■■ Since plaintiff's causes of action were premised upon its right to recover the premiums it paid under the terms of the policy, and no competent evidence was offered to establish that right, the trial court correctly directed a verdict in favor of defendant. The evidence, when viewed in its aspect most favorable to plaintiff, so overwhelmingly favored defendant that no contrary verdict could stand. *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 502, 229 N.E. 2d 504.

Accordingly, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

LINDBERG, P.J., and REINHARD, J., concur.