Luther W. KLUMP, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 95–280L.

United States Court of Federal Claims.

Filed: June 8, 2001.

Published: July 10, 2001 [1].

Luther W. Klump, Bowie, Arizona, appearing pro se.

David W. Spohr, Esq., U.S. Department of Justice, Washington, D.C., for defendant.

## OPINION

ALLEGRA, Judge.

In this case, Luther W. Klump (Mr. Klump or plaintiff), a veteran cattle rancher in southeastern Arizona, alleges that valuable water rights were taken from him by the United States in violation of the Fifth Amendment, thereby requiring just compensation. Defendant argues that there was no such taking because it acquired the water rights not through the exercise of any sovereign power, but under the normal processes of state law. After careful consideration of the briefs filed by the parties, as well as the extensive oral argument conducted herein, the court concludes that the defendant's interpretation of the law is correct and, there-

1. This opinion was originally issued, in unpublished form, on June 8, 2001. On June 29, 2001, defendant filed a motion requesting publication of the opinion. This motion has been granted in a separate order and the court hereby reissues the opinion for publication.

fore, GRANTS defendant's motion for summary judgment.

## I. FACTS

This action stems from a lease-purchase agreement that plaintiff entered into with Gerald Foote and the Estate of Bertha Foote covering the Foote Ranch in the San Simon Watershed of southeastern Arizona. The Foote Ranch consists of 1,180 acres of deeded land adjoining the Badger Den Allotment No. 51100 (the Allotment); the Allotment is owned by the United States and managed by the Bureau of Land Management (BLM). On July 28, 1989, the BLM issued plaintiff a permit to graze his cattle on certain parts of the Allotment. The permit contained various conditions, among them requirements that plaintiff maintain certain fences and exclude his livestock from certain areas.

Through his agreement with Foote, plaintiff claimed rights under the Arizona Stockpond Registration Act, A.R.S. §§ 45–151 and 45–272, to water located at the HX Dam. Plaintiff's water rights derived from a "Certificate of Water Right" and "Statements of Claimant" held by Gerald Foote. The source of this water, Dripping Springs, was on federal lands within the Allotment, but was accessible to plaintiff through the property on which he had grazing rights. .

During the term of the grazing permit, the BLM and plaintiff had a series of disputes concerning plaintiff's alleged failure to comply with the conditions of the permit, including allowing his cattle to graze in prohibited areas. These violations were the subject of several BLM administrative grazing appeals, the end result of which was the issuance of several orders canceling the grazing permit. As a consequence of this cancellation, plaintiff was no longer authorized to graze livestock on the Allotment and, accordingly, any of plaintiff's livestock left on the Allotment were viewed as trespassing and subject to impoundment.

On or about May 8, 1992, BLM issued a notice of impoundment of the Allotment to Mr. Klump and others. Mr. Klump subsequently filed an administrative appeal of the BLM orders with the Interior Board of Land Appeals (IBLA), which, in an opinion dated February 5, 1993, dismissed his appeal. On February 18, 1993, BLM ordered plaintiff to remove his livestock from the Allotment, warning that any livestock that remained after the allowed removal period would be impounded. After various other procedural steps were taken by the BLM, on April 13 and 14, 1993, the BLM, in fact, impounded those of plaintiff's livestock still on the Allotment. Later in 1993, plaintiff appealed the IBLA's decision to the United States District Court for the District of Arizona. That court, on April 21, 1994, upheld the IBLA's decision and rejected plaintiff's claims that his property rights were taken without due process and without just compensation in violation of the Fifth Amendment. Mr. Klump subsequently appealed the district court's decision to the Ninth Circuit, which, in turn, affirmed that decision by memorandum opinion dated December 9, 1994. *See Klump v. United States of America,* 43 F.3d 1479, 1994 WL 692922 (9th Cir.1994).

Prompted by these legal developments, on June 27, 1994, BLM sent an application to the Adjudication Section of the Arizona Department of Water Resources ("ADWR"), requesting a reassignment of Gerald Foote's Statements of Claimant ("Statements") relating to the Allotment. In addition, on June 29, 1994, BLM sent an application to the Operations Division of ADWR, requesting reassignment of Certificate of Water Right No. 3455 ("Certificate"), a certificate originally issued to Mr. Foote in 1973. ADWR thereafter transferred the Statements and the Certificate to BLM.

In April of 1995, plaintiff filed an action in this court seeking damages from the BLM for the alleged taking of his property, including his livestock, water rights, grazing rights, and right to use his ranch. The complaint alleged that the BLM seized plaintiff's livestock in violation of Arizona state law and the Fourth and Fifth Amendments to the Constitution. Plaintiff also argued that his beneficial use of the water, which derived from Gerald Foote's beneficial use, made him the legal owner of the water rights and all rights appurtenant thereto under Arizona state law.

On November 4, 1997, this court granted defendant's motion to dismiss for lack of jurisdiction with respect to plaintiff's Fourth Amendment and Arizona State law claims, as well as those claims relating to fencing the "fee land." The court also granted defendant's motion for summary judgment with respect to plaintiff's claims involving the seizure and sale of his cattle. After giving plaintiff an opportunity to clarify his remaining claims, on July 13, 1998, this court further concluded that the only portion of the "entire ranch" relevant to plaintiff's takings claim was the surface estate of federal lands within the Allotment in which plaintiff claimed he had a possessory interest. This court found that plaintiff's argument that he lawfully owned a possessory interest in these federal lands had been the subject of two prior actions brought by plaintiff, among them the Ninth Circuit decision regarding the cancellation of the grazing permit. *See Klump v. United States*, No. Civ. 93–302 TUC RMB (D.Ariz. Apr. 25, 1994), *aff'd*, 43 F.3d 1479, 1994 WL 692922 (9th Cir.1994). Accordingly, this court granted summary judgment, applying the doctrine of issue preclusion to this claim, ruling that the issue whether plaintiff has a possessory interest in federal lands within the Allotment had already been decided, and, therefore, plaintiff was precluded from presenting new legal arguments relating to this issue. This court also granted summary judgment with regard to various sections of federal land within the Allotment because plaintiff's claim to this land was previously litigated in a quiet title action before the Ninth Circuit. *See United States v. Klump*, 21 F.3d 1117 (9th Cir.1994), *cert. denied*, 513 U.S. 1151, 115 S.Ct. 1102, 130 L.Ed.2d 1069 (1995).

As a result of these rulings, the only issue remaining in this case involves the alleged taking of plaintiff's water rights. On October 22, 1998, defendant filed a Motion for Summary Judgment as to the Water Rights Issue, to which plaintiff responded on December 7, 1998. This case was subsequently transferred to the undersigned judge, who conducted oral argument on this matter on March 7, 2001.

## II. DISCUSSION

"Summary judgment is ... an integral part of the Federal Rules," the Supreme Court has stated, and is "designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 1). Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. RCFC 56; *Hunt v. Cromartie*, 526 U.S. 541, 549, 119 S.Ct. 1545, 143 L.Ed.2d 731 (1999); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The Takings Clause of the Fifth Amendment provides: "[N]or shall private property be taken for public use, without just compensation." However, "[n]ot every deprivation of use or control constitutes a taking." *J & E Salvage Co. v. United States*, 36 Fed.Cl. 192, 195 (1996) (*citing Sun Oil Co. v. United States*, 215 Ct.Cl. 716, 769, 572 F.2d 786 (1978)). "'When the government takes property,'" this court has stated, "'it exercises its rights as sovereign to acquire property from the rightful owner for the public good.'" *J & E Salvage Co.*, 36 Fed.Cl. at 195 (quoting *DSI Corp. v. United States*, 228 Ct.Cl. 299, 655 F.2d 1072, 1074 (1981)). Conversely, it is well established that where the government does not exercise its rights as a sovereign, there is no taking—as this court has put it, "[m]ere assertion of claims to property in a judicial proceeding which is neither eminent domain nor regulatory in nature is not the kind of government action that is capable of causing a taking within the meaning of the Fifth Amendment." *Ultimate Sportsbar, Inc. v. United States*, 48 Fed.Cl. 540, 549 (2001).

The rationale for this legal precept—that no taking lies where the government is not exercising its sovereign powers—was explored in *DSI Corp v. United States, supra*, decided by the Court of Claims. In that case, DSI had been the holder of a first mortgage and the United States the holder of a second mortgage on the same property. In 1969, the United States commenced a foreclosure action in a federal district court,

attacking the validity of DSI's first mortgage. The district court granted the United States immediate possession of the property and, in 1974, ordered foreclosure of the government's second mortgage, but did not address the validity of DSI's first mortgage. Because the government wanted to convey the property free of any cloud on title, in 1976, it negotiated a settlement with DSI, pursuant to which that company foreclosed its first mortgage and purchased the property at the foreclosure sale, and the government then purchased the property from DSI for a cash sum. DSI then brought suit against the government for just compensation for a temporary taking for the seven-year period from 1969 through 1976 because, during that period, the government had the value of the use of the property while DSI was deprived of the use and income therefrom.

Rejecting this claim, the Court of Claims granted summary judgment for the government and explained the basis for its decision in the following passage:

> On these facts, plaintiffs have demonstrated no taking. When the government "takes" property, it exercises its right as sovereign to acquire property from the rightful owner for the public good. *See, e.g., Pollard v. Hagan,* 44 U.S. (3 How.) 212, 11 L.Ed. 565 (1845). Such an exercise is distinct from the right of ultimate ownership. *Kohl v. United States,* 91 U.S. 367, 23 L.Ed. 449 (1875). In the instant case, however, the government did not exercise its sovereignty and expropriate private property from the rightful owner. Instead, the government asserted a claim of right to the property, i.e., that it was entitled to be the rightful owner of the property as the only holder of a valid mortgage on the property and that DSI had no rights in the chattel because its mortgage was void. In essence, this case involved a contest between two parties over conflicting claims of ownership. On such facts, it is axiomatic that there is no taking where, pursuant to court order, the government is in possession of property to which it asserts a claim of rightful ownership.

655 F.2d at 1074. Burnishing the rationale for its conclusion, the court stated: "there is no authority to hold that an effort by the United States to assert its right to property in a noneminent domain judicial proceeding is itself a taking, and the view that so doing of itself exercised the power of eminent domain would be wholly unwarranted." *Id.*

■ The rule described in *DSI* has been applied repeatedly in numerous other cases, with varied fact patterns, both pre-dating and post-dating that decision. *See, e.g., Oglethorpe Co. v. United States,* 214 Ct.Cl. 551, 558 F.2d 590, 595–96 (1977) (foreclosure in accordance with mortgage contracts did not constitute a taking without just compensation in violation of the Fifth Amendment); *Ultimate Sportsbar, Inc. v. United States,* 48 Fed.Cl. at 549 (sponsorship by the EPA of reorganization plan in bankruptcy proceedings which ultimately led to termination of lessee's possessory interest did not effect a taking); *Janicki Logging Co. Inc. v. United States,* 36 Fed.Cl. 338, 346 (1996) (no taking where government acted in a proprietary capacity and exercised rights under contract); *J & E Salvage Co.,* 36 Fed.Cl. at 195 (no compensable taking where government exercised rights under contract); *Southern Comfort Campgrounds v. Federal Home Loan Bank Bd.,* 1995 WL 63090 (E.D.La. 1995) (foreclosure sale did not constitute a taking under the Fifth Amendment, because "a taking only results from the government's exercise of its sovereign power to appropriate private property for public use"). *See also Richmond, Fredericksburg & Potomac R. Co. v. United States,* 75 F.3d 648, 657 (Fed.Cir.1996) ("the government's assertions did not amount to a taking; the government was simply asserting an interest that it properly possessed"). These cases teach that when the government simply asserts its ultimate right to ownership of an interest in property through the same legal channels that any other individual would employ to assert such an interest, no taking under the Fifth Amendment occurs.

■ Here, in obtaining plaintiff's water rights, defendant neither exercised its police power nor its power of eminent domain, but rather merely asserted its adverse interest to

the water located on the Allotment, an interest it believed it possessed once the grazing permit had been canceled. The BLM did not act unilaterally to effectuate this claim through the exercise of any sovereign powers, but instead applied to a state agency, the ADWR, to authorize the transfers. In pressing that claim, the BLM was essentially acting in its proprietary capacity as a landowner and received the same treatment under Arizona law as a private owner. When, in such circumstances, "the Government 'comes down from its position of sovereignty, and enters the domain of commerce, it submits itself to the same laws that govern individuals there.'" *J & E Salvage Co.*, 36 Fed.Cl. at 195 (quoting *Cooke v. United States*, 91 U.S. 389, 398, 23 L.Ed. 237 (1875)). As a consequence, however, the government also removes itself from the ambit of the Fifth Amendment as "a takings claim cannot be based on the Government's acting in its proprietary capacity." *Id.* (citing *Alaska Airlines, Inc. v. Johnson*, 8 F.3d 791, 798 (Fed. Cir.1993)). Based on the foregoing principles, this court concludes that defendant's actions did not constitute a taking because the BLM, in pressing its claims before the ADWR, was acting the same as a private party, and not employing a sovereign power.

It is important to note the limitations of this holding. This court expresses no opinion as to whether the decision of the ADWR in awarding the water rights to the BLM was correct under state law. To be sure, in analyzing the takings claim presented, this court could indirectly examine the propriety of the ADWR's decision in reviewing whether, under state law, plaintiff's water claims amounted to a property interest.[2] But, even were this court definitively to conclude that

plaintiff at one time had such a property interest, it is not for this court to construe Arizona law to determine whether the plaintiff lost his interest in that water once his grazing permit was terminated. Whether the ADWR was correct—or not—in awarding the BLM the water rights in question is, in fact, quite irrelevant to the critical issue here, that is, whether the BLM's actions in pursuing and obtaining those water rights through the ADWR process effectuated a taking under the Constitution. Based on the host of precedents discussed above, the answer to that question is, decisively—no.

### III. Conclusion

The conclusion reached in this case in no way denigrates the noble effort made by plaintiff to represent himself in this somewhat complex legal matter. Rather, the decision reached here simply reflects a logical application of long-standing legal precedents that are binding on this court. For the foregoing reasons, the court **GRANTS** defendant's motion for summary judgment and orders the Clerk to dismiss the complaint in this case. No costs.

**IT IS SO ORDERED:**

---

2. In order to state a valid claim for a taking under the Fifth Amendment's just compensation clause, plaintiff must establish a compensable property interest. *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1027, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992). Plaintiff argues that he has a compensable property interest in the water rights under the State of Arizona's doctrine of beneficial use. Summarizing this doctrine, Mr. Klump stated at oral argument that "[Arizona] had a system where the first guy that got that water, put it to beneficial use, that was his." He argues that since he put the water to use prior to defendant's use, he has rights to the water under Arizona law. Various cases cited by defendant, however, seem to suggest that water rights run with the land to which they are attached. *See, e.g., Salt River Val. Water Users' Ass'n v. Kovacovich*, 3 Ariz.App. 28, 411 P.2d 201, 203 (1966). Moreover, the Arizona Supreme Court recently suggested that these cases still represent good law as applied to property held by the United States, despite the passage of state legislation in 1995 that seemingly altered this rule. *San Carlos Apache Tribe v. Superior Court ex rel. County of Maricopa*, 193 Ariz. 195, 972 P.2d 179, 190, 201 (1999).