In the

# United States Court of Appeals

## For the Seventh Circuit

No. 16-3118

MERYL SQUIRES-CANNON,

*Plaintiff-Appellant,*

*v.*

DENNIS WHITE, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 15 CV 6876 — **Virginia M. Kendall**, *Judge.*

ARGUED JUNE 1, 2017 — DECIDED JULY 19, 2017

Before POSNER, EASTERBROOK, and HAMILTON, *Circuit Judges.*

POSNER, *Circuit Judge.* The plaintiff and her husband used to own and live on a 400-acre estate and horse farm in Barrington Hills, Illinois (a wealthy suburb of Chicago in Cook County, Illinois). They leased the horse farm, which they called "Horizon Farms," to a company they owned called Royalty Farms, LLC, which managed the farm's operations, including the care of the horses, which at one point reached

50 in number. But there was a mortgage on the couple's property, and it was foreclosed in 2013. The Forest Preserve District of Cook County—a county commission that owns more than 69,000 forested acres in the county—bought the property at the foreclosure sale. Royalty Farms, LLC, was not a party to the foreclosure proceeding, but nevertheless the Circuit Court of Cook County issued an order (called a Dispossession Order), the validity of which has not been challenged, directing the plaintiff and her husband to vacate the property.

The Forest Preserve District is not interested in feeding or breeding or otherwise operating a horse farm on the property that it obtained in the foreclosure; and, unsurprisingly therefore, it requested that the plaintiff and her husband move the horses off the property. But taking the allegations in the plaintiff's complaint to be true, for a time the Forest Preserve District tolerated the continued presence of several horses (after the foreclosure sale, the number of horses on the property dropped from 50 to 7). The plaintiff continued visiting the property daily to feed or otherwise tend to the remaining horses, although the Dispossession Order had set a deadline of November 18, 2013, for the couple to vacate the property; nine months later the plaintiff was continuing her daily visits.

She entered the property once again on the morning of August 13, 2014. This time, however, she was arrested and prosecuted in state court by the Cook County sheriff for criminal trespass—but she was acquitted in a bench trial because the judge could not conclusively determine that she'd ever been told not to enter the property. In fact she *had* been told, in an email by the Forest Preserve District's lawyer that

she had received and read the night before her arrest, that any entry by her into the property would be a trespass and that "continued trespassing [would] be addressed by the police."

A year later she brought this federal suit, naming as defendants the Forest Preserve District, its general counsel, its outside lawyer and his law firm (he was not an employee of the District but rather a member of a law firm—Holland & Knight), fifteen unnamed members of either the staff or board of the Forest Preserve District, and the three Forest Preserve District police officers who had arrested her. The suit accused the defendants of false arrest and malicious prosecution. The accusation had and has no merit, and the district court was therefore right to dismiss the suit. And though she'd been acquitted in the state prosecution, there was probable cause to arrest her for criminal trespass, which under Illinois law is trespass plus knowledge that the owner of the property trespassed upon has not authorized the trespass, 720 ILCS 5/21-3(a)(1)–(3)—conditions clearly fulfilled in this case. As a criminal trespasser she was of course liable to be arrested, and couldn't plead ignorance of the trespass since, as noted, she had received a warning—and defied it.

The plaintiff argues that we know that the Forest Preserve District notified her that she was not permitted to enter the property only because of documents attached to the defendants' motion to dismiss her complaint: those documents were a copy of the email warning sent the day before the arrest and a copy of the plaintiff's affidavit, submitted in state court, acknowledging that she was aware of that email. It's true that, if matters outside the pleadings are presented to a court on a Rule 12(b)(6) motion, the court normally must

treat the motion as one for summary judgment and give all parties a reasonable opportunity for discovery. Fed. R. Civ. P. 12(d). But the plaintiff does not dispute the veracity of these documents; indeed, in the district court she withdrew a contention, made in one of her briefs, that she had not received notice that she was prohibited from entering the property. So she was not deprived of "the opportunity to conduct discovery and to present contrary evidence on a point of genuinely disputed fact." *Williamson v. Curran*, 714 F.3d 432, 442 (7th Cir. 2013).

She claims to have been arrested without probable cause because she entered the Forest Preserve land as an employee of Royalty Farms, LLC, rather than *in propria persona*. But neither her status as an employee of Royalty Farms, nor Royalty Farms' rights if any (probably none) in what was now Forest Preserve land, is relevant to whether there was probable cause for her arrest, since the order approving the foreclosure sale stated that the Forest Preserve District "is entitled to and shall have possession of the mortgaged real estate … no sooner than 30 days from the entry of this Order [entered May 5, 2014], without further Order of Court"—and the Forest Preserve District, in notifying her that she was unwelcome on its property, clearly forbade her to return for any reason, in any capacity: "The Cannons cannot enter the property any more, and have no reason to do so." The Forest Preserve and its police did not have to rule out the remote possibility that Royalty Farms had a property right, unmentioned in the order approving the foreclosure sale, that would entitle its agents to enter the property over the Forest Preserve's objection. Cf. *Hurem v. Tavares*, 793 F.3d 742, 745–46 (7th Cir. 2015).

What is true is that an alternative to the arrest would have been for the police, upon accosting her on what was now Forest Preserve land, to have told her she was trespassing and that they would escort her from the property and that if she refused they would arrest her. She might have refused and therefore have been arrested, for remember that she'd defied the arrest warning that she had received the night before, but her complaint suggests that she might have been willing to leave the property. In any event the fact that the police had an alternative did not make the arrest unlawful, for they had an unquestionable right to arrest her because they had probable cause to believe her a criminal trespasser. And remember that although she was prosecuted for the criminal trespass, she was acquitted. She violated the law, but was not punished for the violation, and so has little to complain about.

The judgment of the district court dismissing her suit is

AFFIRMED.