In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 16-3131

MERYL SQUIRES-CANNON, et al.,

*Plaintiffs-Appellants*,

*v.*

FOREST PRESERVE DISTRICT OF COOK COUNTY, et al.,

*Defendants-Appellees*.

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 14-CV-5611 — **Sara L. Ellis**, *Judge*.

_____

ARGUED SEPTEMBER 28, 2017 — DECIDED JULY 26, 2018

_____

Before BAUER, MANION, and HAMILTON, *Circuit Judges*

HAMILTON, *Circuit Judge*. The Forest Preserve District of
Cook County, Illinois, has been trying to acquire a 400-acre
estate in Barrington after the owners defaulted on a mortgage
and note held by the Forest Preserve. The Forest Preserve
foreclosed and then bought the property at the foreclosure
auction. The original owners have expressed their opposition
by filing five lawsuits of their own, in addition to raising af-
firmative defenses and counterclaims in the still-pending

foreclosure action. This appeal arises in the owners' third fed-
eral lawsuit, in which they have alleged unconstitutional tak-
ings, fraud, and derivative claims for conspiracy and aiding
and abetting. The district court dismissed the suit for failure
to state a claim. We affirm.

I.  *Factual and Procedural Background*

    A.  *Underlying Transactions*

In 2006, plaintiffs Meryl Squires-Cannon and Richard Kirk
Cannon purchased a 400-acre estate and horse farm in Bar-
rington. The Cannons bought the property through two
wholly-owned limited liability companies, Royalty Proper-
ties, LLC and Cannon Squires Properties, LLC, which are also
plaintiffs in this lawsuit. The LLCs executed a one-year, $14.5
million note and mortgage loan agreement with Amcore
Bank, N.A. The Cannons allege that Amcore committed to
modify the loan to a longer term before the end of the initial
one-year term. But the financial crisis intervened, and Amcore
reneged. Under financial distress itself, Amcore called the
loan and when, we assume, the Cannons were unable to re-
finance in the financial environment of the time, Amcore filed
for foreclosure in an Illinois state court. Amcore then failed in
2009, and the FDIC became its receiver. BMO Harris Bank,
N.A. bought Amcore's loan assets at a discount from the
FDIC, became the owner of the Cannons' note, and took over
as the plaintiff in the foreclosure action.

When the value of the estate fell in the midst of the finan-
cial crisis, BMO faced a risk that the note was worth more than
the property securing it. And the FDIC had agreed to pay
BMO 80% of any Amcore loan that BMO could not recover

directly from the borrowers. To cut their losses on the Cannons' loan, the FDIC and BMO had incentives to find a buyer for the note. Enter the Forest Preserve. The Cannons allege that the FDIC, BMO, Bayview Loan Servicing, LLC, and Does 1–15 secretly agreed to assign the note to the Forest Preserve for $14 million. After the Forest Preserve's board approved the purchase, BMO assigned the note to the Forest Preserve, which became the plaintiff in the foreclosure action.

In 2013, the foreclosure court granted summary judgment for the Forest Preserve. The Forest Preserve then obtained board approval to offer a credit bid for the estate at the foreclosure sale. The Forest Preserve made the (winning) credit bid of about $14.5 million at the foreclosure sale. The foreclosure court also entered a deficiency judgment against the Cannons for over $6 million. See *BMO Harris Bank, N.A. v. Royalty Properties, LLC*, No. 1–15–1338, 2016 WL 6269967, at *3 (Ill. App. May 17, 2016). The Illinois Appellate Court later reversed the foreclosure judgments. *Id.* at *14. On remand, the foreclosure court reinstated its order making the Forest Preserve a mortgagee in possession, but the Illinois Appellate Court also vacated that order in an interlocutory appeal. *Forest Preserve District of Cook County v. Royalty Properties, LLC*, No. 1–17–1564, 2017 WL 3758758 (Ill. App. Aug. 29, 2017). As far as we know, there is at this time no judgment in the foreclosure action. The Cannons told us at oral argument that the foreclosure action is "starting from scratch."[1]

---

[1] The lack of a final judgment in the foreclosure action could create a ripeness issue for a takings claim. Usually, a plaintiff "must try to obtain compensation under state law before litigating a takings suit." *Kolton v. Frerichs*, 869 F.3d 532, 533 (7th Cir. 2017), citing *Williamson County Regional*

B.  *Lawsuits*

There have now been six separate lawsuits relating to the Cannons' default on the note—three state and three federal. The three state lawsuits are:

(1) the foreclosure action, which is still pending;

(2) the Cannons' lawsuit against the Forest Preserve and BMO (the "taxpayer action"), which was dismissed, *Baker v. Forest Preserve District*, 33 N.E.3d 745 (Ill. App. 2015) (affirming dismissal of all claims and rejecting theory that Forest Preserve's purchase of note and participation in foreclosure auction violated Cook County Forest Preserve District Act), and;

(3) a lawsuit by one of the Cannon entities against the Forest Preserve for breach of a purported lease after the foreclosure sale, which is stayed, *Royalty Farms, LLC v. Forest Preserve District of Cook County*, 92 N.E.3d 943 (Ill. App. 2017) (reversing order awarding possession of property to Forest Preserve and remanding and staying eviction proceedings pending resolution of foreclosure action).

---

*Planning Commission v. Hamilton Bank*, 473 U.S. 172, 186 (1985). That is because a "takings claim … accrues only when the government refuses to pay." *Id.* at 535. But we are free to proceed on the merits despite the absence of a judgment in the foreclosure proceeding because "*Williamson County* has nothing to do with subject-matter jurisdiction." *Id.* at 533. Also, as we discuss below, plaintiffs argue that actions other than the foreclosure amounted to takings, and we need to address those arguments. And on top of that, the Forest Preserve did pay in the foreclosure suit, with its credit bid of $14.5 million. In the swirl of legal arguments in all of this litigation, it is easy to lose sight of the key fact that the Cannons borrowed some $14 million and have not paid it back.

The three federal lawsuits are:

(1) a lawsuit with allegations similar to this one, which was dismissed for lack of jurisdiction, *Squires Cannon v. Forest Preserve District of Cook County*, No. 13 C 6589, 2014 WL 1758475 (N.D. Ill. May 2, 2014);

(2) a lawsuit by Meryl Squires-Cannon against several Forest Preserve officials and employees for false arrest and malicious prosecution, which was dismissed on the merits, *Squires-Cannon v. White*, 864 F.3d 515 (7th Cir. 2017) (affirming dismissal), and;

(3) the lawsuit in this appeal, which the district court dismissed, *Squires Cannon v. Forest Preserve District of Cook County*, No. 14 C 5611, 2016 WL 2620515 (N.D. Ill. May 9, 2016).

II. *Analysis*

Our review of a dismissal under Rule 12(b)(6) for failure to state a claim is *de novo*, and we may affirm on any ground in the record. *Brooks v. Ross*, 578 F.3d 574, 578 (7th Cir. 2009), citing *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008), and citing *Bennett v. Spear*, 520 U.S. 154, 166 (1997). We accept the complaint's well-pleaded facts as true and draw all reasonable inferences from those allegations in the Cannons' favor. *Abcarian v. McDonald*, 617 F.3d 931, 933 (7th Cir. 2010), citing *London v. RBS Citizens, N.A.*, 600 F.3d 742, 745 (7th Cir. 2010). But written exhibits attached to the complaint may trump contradictory allegations. *Id.*, citing *Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 455 (7th Cir. 1998).

A. *Takings Claims*

The takings clause of the Fifth Amendment provides, "nor shall private property be taken for public use, without just compensation." U.S. Const. amend. V. The Fourteenth Amendment makes the takings clause applicable to the States and their subdivisions. See, e.g., *Murr v. Wisconsin*, 137 S. Ct. 1933, 1942 (2017), citing *Chicago, Burlington & Quincy R.R. Co. v. Chicago*, 166 U.S. 226 (1897); cf. *Dolan v. City of Tigard*, 512 U.S. 374, 405–06 (1994) (Stevens, J., dissenting) (criticizing citation of *Chicago, Burlington & Quincy Railroad Co.* as resurrecting substantive due process analysis identified with *Lochner v. New York*, 198 U.S. 45 (1905)). The Cannons allege that the Forest Preserve violated the takings clause here in three ways: (1) by passing an ordinance converting the estate into a forest preserve; (2) by buying the mortgage from BMO and then taking over as the plaintiff in the foreclosure action; and (3) by physically entering the estate and installing Forest Preserve signs at the estate entrances. All three theories fail, and the derivative conspiracy and aiding-and-abetting claims fall with them.

1. *No Taking by Ordinance*

After the Forest Preserve acquired the note from BMO, it passed an ordinance creating a forest preserve district for "lands now owned and lands to be acquired." The "lands" included the Cannon estate, and the ordinance stated that the Forest Preserve "shall acquire" those "lands." The ordinance also authorized the Forest Preserve to bid at the foreclosure auction and set a ceiling for the bid. Enactment of the ordinance was not a regulatory taking, and the district court properly rejected this theory.

A regulatory taking is "a restriction on the use of property that [goes] 'too far.'" *Horne v. Department of Agriculture*, 135 S. Ct. 2419, 2427 (2015), quoting *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922). To determine how far is too far, we consider factors that include "the economic impact of the regulation, its interference with reasonable investment-backed expectations, and the character of the government action." *Id.*, citing *Penn Central Transportation Co. v. New York City*, 438 U.S. 104, 124 (1978).

The character of this government action defeats the Cannons' claim. The ordinance prospectively authorized the Forest Preserve to acquire the estate. The ordinance did not effect the actual acquisition of the estate. And the estate became a part of the Forest Preserve only after the Forest Preserve bought it at the foreclosure sale, not before. (Recall, though, that the foreclosure sale has since been set aside by the state courts.)

The Cannons argue that the ordinance was not prospective because it also authorized condemnation. But the "mere enactment of legislation which authorizes condemnation of property cannot be a taking." *Danforth v. United States*, 308 U.S. 271, 286 (1939) (addressing property owner's claim under the Flood Control Act of 1928). The same principle applies to the ordinance designating the estate as a future forest preserve.[2] One reason for that principle is linked to the economic

---

[2] Illinois courts have held similarly. E.g., *City of Chicago v. Loitz*, 329 N.E.2d 208, 211 (Ill. 1975) (collecting cases and stating "general rule" in Illinois that "mere planning or plotting in anticipation of a public improvement does not constitute a 'taking'"); *Stahelin v. Forest Preserve District of Du Page County*, 877 N.E.2d 1121, 1130–31 (Ill. App. 2007) (no taking where land-use regulation gave no power to regulate, limit, or control

impact factor. Even if the ordinance reduced the estate's value before the foreclosure sale, that reduction is not a taking because any "impairment of the market value" of the estate would be "incident to otherwise legitimate government action." *Kirby Forest Industries, Inc. v. United States*, 467 U.S. 1, 15 (1984) (initiation of condemnation proceedings was not a taking); see also *Danforth*, 308 U.S. at 285 ("A reduction or increase in the value of property may occur by reason of legislation for or the beginning or completion of a project. Such changes in value are incidents of ownership. They cannot be considered as a 'taking' in the constitutional sense."). In addition, of course, there is the practical consideration. If merely authorizing condemnation amounted to a taking, government projects requiring condemnation and compensation would become unmanageable.

### 2. *No Taking via Foreclosure or Physical Entry*

The district court properly rejected the Cannons' theory that the Forest Preserve took the property by buying the note, foreclosing on it, and then buying the estate at the foreclosure sale. By foreclosing on the note, the Forest Preserve exercised its contractual right, not a governmental prerogative. See *Warren v. Government Nat'l Mortgage Ass'n*, 611 F.2d 1229, 1234 (8th Cir. 1980) ("As a party to the contract, and even though it was a governmentally-owned and authorized entity, GNMA had a right to resort to its contractual remedies just as a purely private entity had."), citing *Atlantic Mutual Ins. Co. v. Cooney*, 303 F.2d 253, 259 (9th Cir. 1962), and *Rex Trailer Co. v. United*

---

plaintiffs' ability to use their land and where ordinance contained no enforcement mechanism; noting that adoption of ordinance to acquire land is not a taking because ordinance does not pass an interest in the land).

*States*, 350 U.S. 148, 151 (1956). The Forest Preserve acted "in its proprietary rather than its sovereign capacity." *St. Christopher Associates, L.P. v. United States*, 511 F.3d 1376, 1385 (Fed. Cir. 2008) (no taking where HUD entered into regulatory agreement with property owner and refused to consider owner's rent increase request), citing *Hughes Communications Galaxy, Inc. v. United States*, 271 F.3d 1060, 1070 (Fed. Cir. 2001); see also *Southern Comfort Campgrounds v. Federal Home Loan Bank Bd.*, No. 89–4417, 1995 WL 63090, at *2 (E.D. La. Feb. 14, 1995) (no taking where FDIC, as receiver for original lender, foreclosed and bought property because "a taking only results from the government's exercise of its sovereign power to appropriate private property for public use"), citing *DSI Corp v. United States*, 655 F.2d 1072 (Ct. Cl. 1981). By foreclosing on the note, the Forest Preserve acted like any other creditor with a security interest. See *Klump v. United States*, 50 Fed. Cl. 268, 271 (2001) ("when the government simply asserts its ultimate right to ownership of an interest in property through the same legal channels that any other individual would employ to assert such an interest, no taking under the Fifth Amendment occurs").[3]

---

[3] We assume it is possible for a government entity that is a party to a relevant contract to commit a taking by infringing a property right that exists independent of the contract. See *Clear Creek Community Services District v. United States*, 132 Fed. Cl. 223, 262 (2017) (recognizing possibility but granting summary judgment for government on takings claim), quoting *Tamerlane, Ltd. v. United States*, 80 Fed. Cl. 724, 738 (2008). That is not this case because "when a contract between a private party and the Government creates the property right subject to a Fifth Amendment claim, the proper remedy for infringement lies in contract, not taking." *Id.*, quoting *Tamerlane, Ltd.*, 80 Fed. Cl. at 738.

The Cannons attempt to distinguish these proprietary-function cases by arguing that they contracted with a private party, not a government entity. Nevertheless, the note they signed to obtain more than $14 million gave the lender the right to assign the note to anyone else at any time without notice to or consent from the Cannons. Buying the estate at the foreclosure auction was also not a taking. See, e.g., *Oglethorpe Co. v. United States*, 558 F.2d 590, 596 (Ct. Cl. 1977) (rejecting takings claim where plaintiff entered FHA-insured mortgages with Prudential, which assigned deeds to HUD, which then foreclosed and bought property from itself at foreclosure auction).

The Cannons' physical takings theory also fails because the Forest Preserve was acting as a creditor. If the Forest Preserve prematurely took possession of the estate, patrolled the property, or put up signs at estate entrances without being a mortgagee in possession, the Cannons may have state-law remedies for those claims, but we do not see any constitutional violations in these allegations that are tied so closely to the state-court foreclosure action.[4]

---

[4] The district court's order indicates that the Cannons' second amended complaint did not include this allegation. *Squires Cannon*, 2016 WL 2620515, at *4 n.7. But the complaint alleges that the Forest Preserve installed signs, and it also alleges that the Forest Preserve took physical possession and occupied the estate before obtaining title. Nevertheless, the district court considered the Cannons' allegation that the Forest Preserve installed signs (stating the estate was Forest Preserve property) at estate entrances and concluded that the allegation "did not change the Court's analysis of whether the ordinance at issue amounts to a regulatory taking." *Id.* On appeal, the Cannons maintain that the Forest Preserve installed signs and repeatedly entered and patrolled the estate with Forest Preserve police vehicles. At oral argument, the parties disputed whether

The Cannons' claims against all other defendants for conspiracy and aiding and abetting a taking also fail. Without an underlying constitutional violation, there is no derivative liability. *Champion Parts, Inc. v. Oppenheimer & Co.*, 878 F.2d 1003,

---

these actions occurred before or after the effective date of the foreclosure court's order making the Forest Preserve the mortgagee in possession. We need not remand for the district court to sort out this factual dispute, which is relevant only to the Cannons' potential state-law claims.

We affirm the dismissal of the takings claims on the merits, but claim preclusion (res judicata) based on the final judgment in the taxpayer action could provide an additional basis for affirmance. Because the judgment in the taxpayer action is an Illinois judgment, we would look to the law of Illinois to determine whether claim preclusion bars the claim. *Walsh Construction Co. of Ill. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 153 F.3d 830, 832 (7th Cir. 1998), citing *Whitaker v. Ameritech Corp.*, 129 F.3d 952, 955 (7th Cir. 1997), and 28 U.S.C. § 1738. In Illinois, claim preclusion requires (1) a final judgment on the merits, (2) identical causes of action, and (3) identical parties or their privies. *River Park, Inc. v. City of Highland Park*, 703 N.E.2d 883, 889 (Ill. 1998), citing *Downing v. Chicago Transit Authority*, 642 N.E.2d 456, 458 (Ill. 1994). To determine whether two suits present identical causes of action, Illinois uses a "transactional analysis." *Id.* at 893 ("[S]eparate claims will be considered the same cause of action for purposes of *res judicata* if they arise from a single group of operative facts, regardless of whether they assert different theories of relief.") (brackets added), citing *Rodgers v. St. Mary's Hospital of Decatur*, 597 N.E.2d 616, 621 (Ill. 1992). Because the claims in the taxpayer action and the takings claims all arise from the Forest Preserve's purchase of the note, continuation of foreclosure proceedings, and purchase of the estate at the foreclosure auction, the Cannons and their entities could have (and probably should have) litigated their constitutional claims in the taxpayer action. Cf. *BMO Harris Bank, N.A.*, 2016 WL 6269967, at *12 (claim preclusive effect of taxpayer action barred Cannons' affirmative defense in foreclosure action that Forest Preserve lacked authority to pursue deficiency judgment).

1008 (7th Cir. 1989) (affirming dismissal of Illinois conspiracy claim because plaintiff failed to allege underlying tort).

B. *Fraud Claims*

The Cannons also allege claims for fraudulent misrepresentation and fraudulent concealment: one against the Forest Preserve and its lawyer, Francis Keldermans, and another against the Forest Preserve and a neighbor, Robert McGinley, and McGinley Partners, LLC. For the claim against Keldermans and the Forest Preserve, the Cannons also add conspiracy and aiding-and-abetting claims against all defendants except the United States. Although the claims differ based on the allegedly fraudulent misrepresentations and concealments, both fraud claims fail for the same reasons: no damages and no duty.

A common-law fraud claim in Illinois requires five elements: "(1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement." *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 591 (Ill. 1996), citing *Board of Education of City of Chicago v. A, C & S, Inc.*, 546 N.E.2d 580, 591 (Ill. 1989).

Illinois also recognizes the common-law tort of fraudulent concealment, which requires a plaintiff to "allege that the defendant concealed a material fact when he was under a duty to disclose that fact to plaintiff." *Id.* at 593, citing *Lidecker v. Kendall College*, 550 N.E.2d 1121, 1124 (Ill. App. 1990). The duty to disclose arises only in certain situations, including

where the "plaintiff and defendant are in a fiduciary or confidential relationship" and "where plaintiff places trust and confidence in defendant, thereby placing defendant in a position of influence and superiority over plaintiff." *Id.*, citing *Kurti v. Fox Valley Radiologists, Ltd.*, 464 N.E.2d 1219, 1223 (Ill. App. 1984). Rule 9(b)'s heightened pleading standard requires plaintiffs to allege fraud with "particularity." Fed. R. Civ. P. 9(b); see also *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 569 (7th Cir. 2012), quoting *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). Rule 9(b)'s particular requirement also applies to fraudulent concealment claims. *Wigod*, 673 F.3d at 571.

The Cannons allege that attorney Keldermans, on behalf of the Forest Preserve, attempted to negotiate with them for an agreement for a deed in lieu of foreclosure. Before that negotiation began, Keldermans asked the Cannons to sign a "Pre-Negotiation and Confidentiality Agreement." That confidentiality agreement identified the purchaser as "Horizon Farms Loan Acquisition LLC, an Illinois limited liability company to be formed." Keldermans also allegedly told the Cannons that the purchaser was "not just one individual." The Cannons allege that these statements were fraudulent because the real purchaser was to be the Forest Preserve, and they claim that Keldermans fraudulently concealed that fact. The Cannons allege that they relied on these statements by signing the confidentiality agreement, divulging confidential information to Keldermans, and refraining from learning that the Forest Preserve was the purchaser in time to oppose the Forest Preserve's approval of the note purchase. The Cannons claim that they were damaged because, once the Forest Preserve had the option to buy the note, BMO could not negotiate

a resolution with them—even though the Cannons offered the same amount for the note that the Forest Preserve had.

The allegations against McGinley and McGinley Partners are similar. McGinley met with the Cannons and told them that a "group of neighbors" was interested in buying the estate if the Cannons would assign title to them. The Cannons allege that McGinley concealed from them the fact that he was acting on behalf of the Forest Preserve. The Cannons relied, they say, by disclosing their willingness to negotiate, and they claim they were damaged because they could have opposed the Forest Preserve's efforts and successfully negotiated with BMO.

Even if these statements were fraudulent, the Cannons fail to allege any plausible damage. We agree with the district court: the Cannons inflicted their own damage by defaulting on the note. BMO could assign the note without any apparent restrictions. *Squires-Cannon*, 2016 WL 2620515, at *7. The damage theory of both fraud claims is that the Cannons could not negotiate a resolution with BMO. But BMO's inability to negotiate did not arise from Keldermans' or McGinley's alleged fraud. The Forest Preserve signed the agreement to buy the note from BMO on February 4, 2013—before the Cannons' meeting with Keldermans on February 14, 2013, and before their meeting with McGinley on March 11, 2013.

The fraudulent concealment claims also fail because Keldermans and McGinley had no duty to disclose to the Cannons the Forest Preserve's involvement in the deals they were trying to negotiate. The Cannons do not allege a fiduciary or confidential relationship. And their allegations do not indicate a special trust relationship because "the standard for identifying a special trust relationship is extremely similar to

that of a fiduciary relationship." *Toulon v. Continental Casualty Co.*, 877 F.3d 725, 738 (7th Cir. 2017), quoting *Wigod*, 673 F.3d at 571. "[A]symmetric information alone does not show the degree of dominance needed to establish a special trust relationship." *Wigod*, 673 F.3d at 573, citing *Miller v. William Chevrolet/GEO, Inc.*, 762 N.E.2d 1, 13–14 (Ill. App. 2001).

Without an underlying tort, the derivative claims for conspiracy and aiding and abetting fail. *Champion Parts, Inc. v. Oppenheimer & Co.*, 878 F.2d 1003, 1008 (7th Cir. 1989) (affirming dismissal of Illinois conspiracy claim because plaintiff failed to allege underlying tort); *Hefferman v. Bass*, 467 F.3d 596, 601–02 (7th Cir. 2006) (reversing dismissal of Illinois aiding and abetting claim but noting that aiding and abetting claims require allegation of a "wrongful act" by "the party whom the defendant aids"), citing *Thornwood, Inc. v. Jenner & Block*, 799 N.E.2d 756, 767 (Ill. App. 2003).

The district court correctly granted the defendants' motion to dismiss, and its judgment is

                                                            AFFIRMED.