**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted March 13, 2020[*]
Decided March 17, 2020

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

AMY C. BARRETT, *Circuit Judge*

No. 18-3531

| | |
|---|---|
| THOMAS A. ZUMMO,<br>    *Plaintiff-Appellant*, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 17 C 9006 |
| CITY OF CHICAGO,<br>    *Defendant-Appellee*. | Edmond E. Chang,<br>*Judge*. |

**O R D E R**

When Thomas Zummo last renewed his taxi medallion with the City of Chicago, he expected limited competition from other drivers seeking passengers. But in 2014, when the City enacted regulations for ride-share companies such as Uber and Lyft, it permitted many more drivers to enter the market for passengers. Zummo has now sued the City, contending that by failing to protect his investment in his taxi medallion, the

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

City denied him due process, restrained his trade, and committed fraud. The district court correctly dismissed the complaint for failure to state a claim, so we affirm.

According to his complaint, for over 30 years Zummo worked as a licensed taxi driver. About 20 years ago, he purchased a taxi medallion, which allowed him to operate his car as a taxi. *See* Municipal Code of Chicago, Ill. § 9-112-020. At that time, the City capped the number of taxi medallions at 7,000 and limousine licenses at 3,000. In 2014 the City enacted new regulations for ride-share companies, creating a "two-tier" system in which the licensing, safety, and insurance requirements for ride-share companies differ from those imposed on taxis. *See* MCC § 9-115-010 to -250. As a result, the for-hire transportation market has ballooned to include over 200,000 new drivers, plunging the value of Zummo's taxi medallion by over $200,000 and intensifying competition for passengers. After Zummo's medallion and chauffeur's license expired by 2017, he did not renew them—he could not because he was delinquent on his water bill. *See* MCC §§ 9-104-050, 9-112-160; *see also id.* § 4-4-150. The City later cited Zummo for soliciting a taxi fare without a license and other unlawful practices. *Id.* §§ 9-104-020(a), 9-112-020(a), 9-112-150, 9-112-260, 9-112-390. It also impounded his car and fined him. Zummo has contested these actions in ongoing administrative proceedings.

We understand Zummo's appeal to challenge the dismissal of his complaint insofar as it advanced three legal theories about the City's "two-tier" regulatory scheme for taxis and ride-share providers: (1) it violates his rights under the substantive component of the due process clause, 42 U.S.C. § 1983; (2) it constitutes a "restraint of trade" under the Sherman Antitrust Act, 15 U.S.C. §§ 1 to 7; and (3) it reflects statutory and common law fraud. (We do not discuss other legal theories that Zummo raised in the district court but has not developed on appeal. These concern his impounded car, his fines, his water bill, an unspecified agreement, and promissory estoppel.)

We first address Zummo's claim about due process. The district court dismissed this claim because, it explained, Zummo's interest in his taxi medallion does not require the government to shield him from market forces. *See Ill. Transport. Trade Ass'n v. City of Chicago*, 839 F.3d 594, 596 (7th Cir. 2016). Zummo responds that the City's regulatory scheme offends substantive due process by shrinking the value of his taxi medallion. But before we can even look at the loss in the medallion's value, Zummo must show that he had a cognizable property interest in the value of his medallion—"[i]ntrusion upon a cognizable property interest is a threshold prerequisite to a substantive due process claim." *Khan v. Bland*, 630 F.3d 519, 535 (7th Cir. 2010).

Zummo has no such property interest. "Taxi medallions authorize the owners to own and operate taxis, not to exclude competing transportation services." *Ill. Transport. Trade Ass'n*, 839 F.3d at 596; *see also Newark Cab Ass'n v. City of Newark*, 901 F.3d 146, 154 (3d Cir. 2018) (medallions do not confer "a right to be the exclusive providers of transportation services"). Because the City has the power to permit more market entrants, Zummo has no property interest in the medallion's market value—medallions do not guarantee an economic benefit or shelter their owners from competition. *See Progressive Credit Union v. City of New York*, 889 F.3d 40, 53 (2d Cir. 2018) (no cognizable property interest in the "market value" of a taxi license, where different regulations for taxis diminished license's value); *Minneapolis Taxi Owners Coal., Inc. v. City of Minneapolis*, 572 F.3d 502, 508–10 (8th Cir. 2009) (ordinance removing cap on the number of taxi licenses issued by the city, and thereby decreasing market value of existing licenses, "does not implicate the holders' property interests or, it follows, their due process rights"). Thus his due process claim fails.

Zummo also repeats his argument that the City illegally engaged in "restraint of trade." He complains that the City allows ride-share drivers to "unlawfully pirate[], roam[], and gam[e] the transportation system." Construing this as a claim under Section 1 of the Sherman Antitrust Act, *see* 15 U.S.C. § 1, the district court correctly dismissed it because Zummo alleges no agreement or conspiracy between the City and anyone else, as Section 1 liability requires. *Alarm Detection Sys., Inc. v. Vill. of Schaumburg*, 930 F.3d 812, 826–27 (7th Cir. 2019). And the City could not conspire with itself. *See Ziglar v. Abbasi*, 137 S. Ct. 1843, 1867 (2017). Because Zummo has alleged only an "independent, legislative decision" by the City to pass the ride-share regulations, he does not state a violation of Section 1. *See Alarm Detection Sys., Inc.*, 930 F.3d at 828.

For completeness, we note that Zummo's complaint does not allege a violation of Section 2 of the Sherman Antitrust Act. 15 U.S.C. § 2. That section bars monopolization through willful, anticompetitive acts that harm consumers. *See id.* Zummo posits that ride-share drivers caused "financial decimation" to taxi drivers, but he does not allege that consumers have suffered. Nor could he: ride-share drivers bolster competition by increasing the number of available for-hire vehicles and lowering prices. *See Phila. Taxi Ass'n v. Uber Techs.*, 886 F.3d 332, 340 (3d Cir. 2018). And lower prices, unless predatory, do not threaten competition. *See Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 340 (1990). (Predatory prices are set below costs, and Zummo does not allege that the City enacted its regulations to create such pricing. *See Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 222–24 (1993).)

Finally, Zummo argues that the City committed fraud. He appears to contend that the City committed common-law fraud and violated the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2, by regulating ride-share drivers differently than it does taxis.

We agree with the district court that neither claim can succeed. Common-law fraud requires "a false statement of material fact." *Squires-Cannon v. Forest Pres. Dist.*, 897 F.3d 797, 805 (7th Cir. 2018) (citing *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 591 (Ill. 1996)). Similarly, a claim under the Consumer Fraud Act requires "a deceptive act or practice by the defendant." *Aliano v. Ferriz*, 988 N.E.2d 168, 176 (Ill. 2013). Zummo concedes that the City did not commit "physical or verbal actions of fraud." That alone dooms these claims. Zummo responds that the City's fraud was its "endless propaganda" (by unnamed persons at unspecified times) that the transportation market is an "even playing field," assertions on which he says he relied to continue as a taxi driver. But because Zummo does not allege who made this assertion, when, to whom, or in what context, these assertions do not justify a suit for fraud. *See* FED. R. CIV. P. 9(b); *Connick*, 675 N.E.2d at 591; *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737–38 (7th Cir. 2014).

AFFIRMED